Stringfield v. Hirsch and Neal v. Neal.

STRINGFIELD v. HIRSCH

AND

NEAL v. NEAL.

(*Nashville.*    February 21, 1895.)

1. ATTACHMENT BOND.    *Attorneys' fees not recoverable for breach of.*

Attorneys' fees, incurred in defending a wrongful attachment or injunction, are not an element of the damages that may be recovered for breach of an attachment or injunction bond. (*Post, pp. 430–438.*)

Cases cited and approved: Littleton v. Frank Bros., 2 Lea, 301; Williams v. Burg, 9 Lea, 456; Newman v. Washington, M. & Y., 79; Davenport v. Harbert, 1 Leg. Rep., 172; White v. Clack, 2 Swan, 231; 15 Wall., 211; 3 Dall., 306; 23 How., 2; 13 How., 370.

2. SAME.    *Taxes not recoverable for breach of.*

Where a fund already in *custodia legis* is impounded by a wrongful attachment or injunction, the taxes accruing thereon pending the litigation, and paid out of the fund, are not an element of the damages that may be recovered for breach of the attachment or injunction bond.    (*Post, p. 438.*)

3. SAME.    *Receiver's compensation not recoverable for breach of.*

Where a fund already in *custodia legis* is impounded by a wrongful attachment or injunction, the receiver's compensation for loaning the fund pending litigation, which was retained out of the accruing interest, does not constitute an element of the damages recoverable upon breach of the attachment or injunction bond.    (*Post, pp. 438–439.*)

4. SAME.    *Joint judgment upon several bonds erroneous.*

Where several creditors successively attach, or otherwise impound, the same fund of their debtor, and give separate attachment or injunction bonds, they are not liable, upon dismissal of their suits, to a joint judgment for the damages resulting

from the wrongful prosecution of their attachment or injunction suits. (*Post, pp. 439–441.*)

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. J. A. CARTWRIGHT, Sp. Ch.

JAS. S. PILCHER for Stringfield, Einstein & Co.

CHAMPION, HEAD & BROWN and L. R. CAMPBELL for Etlinger & Co.

NATHAN COHN and STEGER, WASHINGTON & JACKSON for Fechheimer and others.

J. W. GAINES and E. A. PRICE for Mendil, Bremen & Co.

JOHN RUHM & SON for L. Jonas, David Lowenheim and T. C. Petri.

COLYAR, WILLIAMSON & COLYAR and J. S. PILCHER for Margaret G. Neal.

DANIEL & WATT for Henry E. Neal.

WILKES, J. On July 3, 1891, attachments were separately sued out in the Chancery Court of Davidson County by Jonas & Co., Lowenheim and Petri, creditors of I. Mihalovitch, and levied on a stock of goods as the property of I. Mihalovitch,

a resident of Cincinnati, O., but in possession of
his son-in-law, Joseph Hirsch, in the city of Nash-
ville. The Clerk and Master was appointed receiver,
and took charge of the goods attached, and sold
them, under the orders of the Court, on July 27,
1891, for $10,000, the sale being confirmed July
31, 1891, by the Court. After the property had
thus been attached as the property of Mihalovitch,
and placed in the hands of the receiver and sold,
various creditors, some eleven in number, filed bills
seeking to impound the proceeds of sale, alleging
that Hirsch was the real owner of the property,
and enjoining the paying over the proceeds to the
creditors of Mihalovitch.

The bill of Stringfield, Einstein & Company was
filed August 1, 1891, and is especially referred to
as raising the issues in this case. The prayer of
their bill was that enough of the proceeds of sale
of the goods be impounded to satisfy complainant's
debt. An order was granted, upon complainants giv-
ing bond in the sum of $1,000, conditioned to pay
all damages for the wrongful procuring of the re-
straining order, that a sufficient amount of such pro-
ceeds be impounded to satisfy complainants' debt.
Bond was given payable to Hirsch & Co., and other
defendants, not naming them, but no injunction was
issued in that special case. In other cases, credit-
ors attached the proceeds as the property of Hirsch
& Co., and enjoined Jonas, Lowenheim and Petri
from receiving the proceeds of the sale. Answers

were filed, and an order was obtained dissolving the injunction and removing the restraining order upon the execution of refunding bonds, but, in the meantime, other bills attaching and impounding the funds and enjoining their payment, followed in rapid succession, so that the refunding bonds were never, in fact, executed, and the funds remained in the hands of the receiver and under the custody of the Court until final hearing, when the attachments were dismissed, injunctions dissolved, and impounding orders removed, so far as they interfered with Jonas, Lowenheim, and Petri, the Court holding their bills to be properly filed, and that the property should be applied to the debts of Mihalovitch, instead of to the debts of Hirsch & Co. The cause was appealed to this Court, and, at a former term, this Court dismissed the appeal, holding that Mihalovitch was a fraudulent vendee and Hirsch & Co. were fraudulent grantors; that, as between the creditors of the fraudulent vendee, Mihalovitch, and the fraudulent vendor, Hirsch & Co., the goods should go to the creditors of Mihalovitch, inasmuch as they were first attached as his property.

The cause was remanded to the Chancery Court to execute all unexecuted orders, and for a reference to the Clerk and Master to report the damages sustained by the wrongful suing out of the injunction writs and impounding orders. The Clerk and Master executed the order of reference, and reported as damages the following items:

Stringfield *v.* Hirsch and Neal *v.* Neal.

Counsel fees in securing dissolution of injunc-
tion and impounding orders................$250 00
Taxes for 1892 and 1893 on fund impounded.... 120 00
Costs incurred under injunction and impound-
ing proceedings ...........................  11 40
Commissions to receiver on impounded fund
loaned out to attaching creditors...........  68 70

Total ....................................$440 60

Exceptions were filed to this report, but the ac-
count was finally confirmed, and it was decreed by
the Court that Petri, Jonas, and Lowenheim, attaching
creditors of Mihalovitch, recover of the complainants,
who attached as creditors of Hirsch & Co., and the
sureties on their bonds, the amount of $440.60
and costs, for which execution might issue. The
decree further provided: "But as between said orig-
inal complainants, the Court is of opinion, and so
decrees, that each should contribute to the recovery
against them herein had for damages and costs an
amount which would be equal in proportion to the
amount of the respective debts of each upon which
suits were brought, and, if complainants so desire,
they may, as between themselves, have a reference
to the Clerk and Master to ascertain their propor-
tion on the above basis, and a reference was ordered
accordingly, the Clerk and Master to report as soon
as practicable. From this decree, the several com-
plainants, creditors of Hirsch & Co., appealed, the
order of reference being unexecuted, and they have
assigned errors. These errors are, in substance:

1. That attorneys' fees are not a proper element

of damages for wrongfully suing out attachment or injunction writs and obtaining impounding orders.

2. That taxes paid by the receiver on the fund while in his hands under impounding orders, are not proper elements of damage in such cases.

3. That the item of $11.40 costs was not a proper matter of damages.

4. That the commissions of $68.70 to the receiver should not have been allowed as damages.

5. That it was error to allow damages against parties who reached nothing by their attachments on account of the fact that the entire fund was absorbed by prior attachments.

6. That it was error to give a joint judgment against all the creditors, and against each for the full amount of the entire fee allowed for all the cases.

7. That the Court erred in adjudging against appellants the costs of the reference to the Clerk and Master.

The first and most important question presented is, Are counsel fees proper elements of damage in cases where attachments and injunctions are wrongfully sued out and impounding orders wrongfully obtained?  Upon this question there is an abundance of authority and an irreconcilable conflict of decisions in the Courts of the several States and the Federal Courts.

In High on Injunctions, Sec. 1685, it is held that, according to the great weight of authority, reason-

able counsel fees, incurred in procuring the dissolu-
tion of an injunction, is a proper element of dam-
ages, the amount being limited to the fees paid for
procuring the dissolution, and not for the general
defense of the case.    This holding proceeds upon
the idea that the defendant has been compelled to
employ counsel to rid himself of an unjust restric-
tion which the plaintiff has placed upon him, and
hence such fees will only be allowed when mo-
tion is made to dissolve pending the litigation and
before the hearing on the merits.    Section 1686.
Again: Fees will not be allowed to cover the
entire expense of the defense, but only for such as
was incurred about the injunction.    Sections 1688–
1690.    See also Sedgwick on Damages, Vol. I., Sec.
257; Sutherland on Damages, Vol. I., Sec. 85; Vol.
II., Secs. 524, 525; Beach on Injunctions, Secs.
203–210.    In these text books the principal authori-
ties pro and con are cited and collated.    A well-
considered case holding the majority view is *Cook* v.
*Chapman*, 41 N. J. Eq., p. 152.

This rule thus stated, with minor modifications,
is laid down in some twenty-six States of the Union,
among them the following: Alabama, California, Col-
orado, Florida, Georgia, Illinois, Indiana, Kansas,
Kentucky, Louisiana, Michigan, Minnesota, Missouri,
Montana, Nevada, New Hampshire, New Jersey, New
York, Ohio, Virginia, and West Virginia.    In some
of these States the matter is regulated by statute,
as in Iowa, Mississippi, and Washington State.    But

the rule is held otherwise in Arkansas, Maryland, North Carolina, Oregon, Pennsylvania, South Carolina, South Dakota, Texas, Vermont, and is settted by neither statute nor decision in Connecticut, Massachusetts, North Dakota, and Rhode Island, so far as we have been able to ascertain. In the United States Supreme Court and in the Federal Courts such fees are not allowed.

The case of *Oelrichs* v. *Spain*, 15 Wall., 211, sets forth the holding of the Supreme Court of the United States in a case very similar to the one at bar. In that case injunction was granted upon a bond conditioned to prosecute the writ with effect, or pay and satisfy the damages and charges which should be occasioned by such writ. The injunction was dismissed, and suit was brought upon the bond to recover damages, including counsel fees. The Court below allowed $2,500 counsel fees, and the case was appealed. The Court referred to the case of *Arcamble* v. *Wiseman*, 3 Dall., 306; *Teese* v. *Huntington*, 23 How., 2; *Day* v. *Woodworth*, 13 How., 370, 371, and other cases, as being analogous, and continued: "The point here in question has never been decided by this Court, but it is clearly within the reasoning of the case in 13 How., and we think it substantially determined by that adjudication. In debt, covenant, and assumpsit, damages are recovered, but counsel fees are never included. So in equity cases where there are no injunctions, only taxable costs are allowed complainants. The

same rule is applied to the defendant, however unjust the litigation of the other side may be, and however large the *expensa lites* to which he may have been subjected. The parties, in this respect, are on a footing of equality. There is no fixed standard by which the honorarium can be measured. Some counsel demand more than others, more counsel may be employed than are necessary; when client and counsel both know that the fees are to be paid by the other party, there is danger of abuse. A reference to a Master, or an issue to a jury, might be necessary to ascertain the proper amount, and the grafted litigation might be more animated and protracted than that in the original cause. It would be an office of some delicacy on the part of the Court to scale down the charges, as might sometimes be necessary." The Court continues: "We think the principle of disallowance rests on a solid foundation, and the opposite rule is forbidden by the analogies of the law and sound public policy."

In Tennessee we have the following cases bearing more or less directly on the controversy:

In *Littleton* v. *Frank Bros.*, 2 Lea, 301, Deaderick, Ch. J., delivered the opinion of the Court: "This is an action at law by plaintiff against defendants, who were sureties on an attachment bond executed in a suit in Chancery Court. The attachment was issued wrongfully, although on probable cause. The damages sued for are counsel fees, $125, and costs, $2.50, incurred in defending said attach-

28—10 P

ment suit. The Circuit Judge, deciding the case without a jury, held the plaintiff not entitled to recover, and she appealed. As to the $125 counsel fees, we have held in an unreported case such fee is not recoverable in cases like this. But plaintiff, for the wrongful suing out of the injunction, is entitled to recover some damages, and the judgment of the Circuit Court will be reversed, and judgment entered here for plaintiff for $2.50 damages, with costs." *Littleton* v. *Frank Bros.*, 2 Lea, 301.

In *Williams* v. *Burg*, 9 Lea, 456, suit was brought to recover upon an alleged breach of warranty in a deed, where the title had failed. In such case, of course, the defendant must make defense, and the eviction must be by legal process in order to entitle the vendee to proceed upon the covenant of warranty. It is a matter of necessity that he shall defend, and, in such defense, the services of an attorney are necessary. In regard to the right to recover attorney's fees in making such defense, this Court used this language:

"If the employment of counsel be necessary, upon principle, it is not easy to see why the expense is not as much a legitimate part of the damage sustained as the costs of the cause. The common law doctrine that the services of counsel are honorary and gratuitous, does not prevail in this State. *Newman* v. *Washington*, M. & Y., 79. Yet, if such expense is put upon the same ground as the costs, the plaintiff would in every case recover his

necessary counsel fees in protecting a rightful claim against a defendant, precisely as he recovers his costs. There would be some justice in the claim, and, in some States, and in the Federal Courts, a tax fee is, in some instances, allowed. But such fees have never been allowed in the Courts of this State. It is within the recollection of some of the members of this Court that we have decided against the claim in a case precisely of this character. We have certainly so decided analogous cases, and the Chancellor's decree on this point will be affirmed. *Williams* v. *Burg*, 9 Lea, 456, 457.

In the case of *Davenport* v. *Harbert*, 1 Legal Reporter, 172, it was sought to recover attorney's fees as damages upon an injunction bond. This Court refused to allow such damages, and in deciding the case used this language: "To hold her responsible for fees to adversary's counsel would be to establish precedents under which all successful defendants might claim reimbursements for fees paid their attorneys." *Davenport* v. *Harbert*, 1 Leg. Rep., 173.

In *White* v. *Clack*, 2 Swan, 231, this Court declined, in an action for mesne profits, to allow counsel fees incurred in the prosecution of the action of ejectment.

It is insisted that the cases of *Davenport* v. *Harbert*, 1 Leg. Rep., 173, and *Oelrichs* v. *Spain*, 15 Wall., 211, *supra*, are not exactly similar to the case at bar, inasmuch as they do not show that

the fees claimed in those cases were properly fees incurred about the injunctions alone, and not in the general defense of the cases; and this criticism is just, so far as we can see from the meager reports of these cases; but at last the question, if not settled by these cases on analogies, is one of broad public policy, and should be settled in accordance with the general trend of our decisions in similar cases and with the wisest public policy.

It is difficult to see upon what ground counsel fees incurred by the adverse party should be charged up to the defeated party any more in attachment and injunction cases than in other litigations upon contracts or for damages for torts. The litigation may be equally unjust and oppressive, in other cases as in the case of attachments and injunctions. It is true, the latter cases are, in some respects, more summary, and may entail damages arising out of the seizure of defendant's property; but all this is provided for by the terms of the bond required to cover damages sustained. But counsel fees are as necessary in the one class of cases as in the other, and are neither peculiar nor more onerous in cases of attachments and injunctions than in other cases.

It is said that additional fees are required to remove the attachment and injunction, and relieve from the impounding orders, but this is more imaginary than real, as the attention necessary to protect and guard against the injunction or attachment is in a vast majority, if not all the cases, merely incidental

to the defense upon the merits, and it is practically impossible to distinguish between services rendered about the attachment or injunction and that about the defense of the case generally. Any apportionment of the fees between these different services is more or less arbitrary and fanciful. But, if it were otherwise, it is at last but counsel fees of the opposite party which his adversary is called upon to pay.

It is said that in attachment and injunction cases a bond is required, the conditions of which are to pay all such damages as occur by the wrongful suing out of the writs, and that this creates virtually a contract on the part of the defendant to pay such damages. But we think that this is a mistaken view of the office and reason of the bond. The liability for damages for wrongfully suing would be the same so far as the principal in the bond is concerned, whether the bond were executed or not, and the office of the bond is not to create or regulate the liability of the principal, but to bring in the bondsmen, as the securities of the principal, to answer for such damages as are proper. While the liability of the sureties arises out of the execution and condition of the bond, the liability of the principal in nowise depends upon the bond or its conditions.

We think that the analogies of the law, as well as the soundest public policy, demand that counsel fees, in suits upon contracts, or for damages for torts, or upon attachments or injunctions, should not be regarded as a proper element of damages, even where

Stringfield *v.* Hirsch and Neal *v.* Neal.

they are capable of being apportioned so as to show the amount incurred for the attachments and injunctions as separate and distinct from the other services necessary in the case. It is not sound public policy to place a penalty on the right to litigate; that the defeated party must pay the fees of counsel for his successful opponent in any case, and, especially, since it throws wide the doors of temptation for the opposing party, and his counsel, to swell the fees to undue proportions, and, in cases of attachment and injunction, to apportion them arbitrarily between the fees pertaining properly to the attachment and injunction and that relating to the merits of the case.

We think the second assignment of errors is well made. The funds in the hands of the receiver were subject to taxation. There is no evidence or intimation that they were doubly taxed. The parties entitled to the funds were residents of the State, and the funds were taxable, and would have been so, we must assume, even if the complainants had realized them, and put them into their business, or otherwise invested them. We cannot presume that they would have so disposed of the funds as to escape. taxation if they had been realized and paid over to them.

We think the item of $68.70 commissions to the Clerk and Master and receiver was not a proper element of damages. This was commission upon the interest which accrued from loaning out the impounded fund. Whether this should have been al-

lowed to the receiver is a question not now before us, but it appears that this fund was loaned to the creditors who were adjudged entitled to it on final hearing, and it was never, in fact, paid into the hands of the Clerk, nor paid out by him, and was simply charged up to the attaching creditors on final settlement of their accounts. It was a mere incident to the receivership which was instituted by these creditors, and before the defendants appeared in the case. The fund could have been drawn out on refunding bond instead of being loaned.

It was error to charge each attaching party the full amount of these damages, or to give a joint judgment against them. There was no joint tort by the several attaching creditors. There was no joint liability between the principals and sureties in the several bonds executed, and no connection between them at the time the attachment and injunctions were sued out and the damage done. The fund in the case was originally impounded by the creditors Jonas, Petri, and Lowenheim. It remained tied up by them, as well as by the subsequent attachments, until the final hearing in the case. It is apparent that the liability of the first attaching creditors may be very different from that of one who subsequently attaches a fund already tied up in Court. One may cause the loss of credit and damage to business, the other may not affect either. One creditor may reach no fund, while another may realize the whole of it. Each case must stand on

its own merits and facts. If wrongfully suing, each creditor is liable for his own tort. There is no joint liability for distinct and different torts. There is no right of contribution if one should have the whole of the recovery to pay. The attempt of the Chancellor to apportion this joint judgment between the creditors in proportion to their debts, proceeds upon a theory entirely untenable. It cannot be assumed, and certainly is not shown, that the damages were caused by the several creditors in the proportion of their respective debts. On the contrary, it clearly appears that it is impossible to show how much of this damage was incurred in each particular case, and hence the necessity for apportionment, but this necessity does not make the apportionment right and proper, but shows its incorrectness in theory.

The item of $11.40 purports to be made up of certain cost items taken from the tax journal, a book kept by the Clerk and Master in his office. The items are not specified and described so that we may know what they are. It is said these are items of cost, accruing alone upon account of the injunction and attachment proceeding in the several cases while being heard together. This may be so, but the nature of the items does not sufficiently appear, and, moreover, the joint judgment for them cannot be sustained in this case, even if they were proper elements of damage. There are other reasons in these cases which make the decree of the Chan-

cellor erroneous as to the different creditors, each having some facts peculiar to his case, but we deem it proper to pass over minor irregularities and decide the matter involved on the broad grounds of the correctness or incorrectness of the items.

We are of opinion the Chancellor was in error, and we reverse his decision and discharge the reference, and dismiss the proceedings at the cost of the complainants, Jonas & Co., Lowenheim, and Petri.

The case of *Margaret G. Neal* v. *Henry E. Neal* is entirely distinct and separate from the other cases, and has no connection with them in any way whatever, but involves the question alone of whether counsel fees paid for services rendered about the injunction only are legitimate elements of damage in a suit, or upon reference against the enjoining complainants and his sureties. The question is presented in this case clearly and uncomplicated by any other question, and it is reported with the former cases to show the same holding and result.

The Chancellor in the Court below allowed the fee on reference, and we think this was error; and the decree of the Chancellor is reversed with costs against appellee.