Edna L. GOINGS, Appellant,

v.

AETNA CASUALTY AND SURETY
COMPANY, Appellee.

Court of Appeals of Tennessee,
Western Section.

Sept. 19, 1972.

Certiorari Denied by Supreme Court
March 19, 1973.

Hal Gerber, Memphis, for appellant.

G. Wynn Smith, Memphis, for appellee.

NEARN, Judge.

Edna Goings had been involved in an automobile collision. As a result of that collision, she was sued and judgment was rendered against her in the amount of $35,000.00. The judgment amount was in excess of her coverage with her insurance carrier, Aetna Life and Casualty Company.

The suit now before us is the one whereby Edna Goings sought judgment against Aetna for that excess plus attorney fees, based upon the alleged lack of good faith and the negligence of Aetna in the handling of the claim against her. In this case, at the close of all the proof, the Trial Judge directed a verdict in favor of the defendant Aetna. The plaintiff has appealed from that action of the Trial Judge.

The two Assignments of Error charge the Trial Court with error in directing a verdict. The basis for the Assignments is that there was material and determinative evidence on both the issue of "bad faith" and the issue of attorney fees which would therefore require that the matters be submitted to the jury.

It is the position of the defendant that on the facts of this case, as a matter of law, there can be no recovery by the plaintiff on either issue.

At the close of all the proof, counsel for defendant renewed the motion for a directed verdict which had been previously made at the conclusion of plaintiff's proof. The motion was in two parts. The first part was for a special directed verdict on the issue of attorney fees and the second part was for a general directed verdict. The motion was granted on each issue.

■ At the outset, we overrule appellant's second Assignment of Error which is directed to the issue of attorney fees. We hold that there was no error in the Trial Judge's action in directing a verdict for defendant on the issue of attorney fees. In the absence of a statutory provision therefor, or contractual agreement between the parties, attorney fees incurred by a plaintiff in recovering a judgment for damages is not a proper element of damages and the allowance of such is contrary to the public policy of Tennessee. Stringfield v. Hirsch (1895) 94 Tenn. 425, 29 S. W. 609; Williams v. Burg (1882) 77 Tenn. 455; Gillespie v. Federal Compress & Warehouse Co. (1953 W.S.) 37 Tenn.App. 476, 265 S.W.2d 21 and Thayer v. Wright Company (1961 W.S.) 50 Tenn.App. 515, 362 S.W.2d 805. The policy of insurance does not provide for an allowance of attorney fees to the plaintiff and we know of no statute that allows it.

We now turn to the remaining issue.

■ In reviewing a Trial Judge's action on a motion for a directed verdict this Court is required, as is the Trial Court, to look at all the evidence, to take the strongest legitimate view of it in favor of the opponent of the motion, and to allow all reasonable inferences from it in his favor; to discard all countervailing evidence, and if then, there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. Ridley v. Spence (1970 M.S.) Tenn.App., 456 S.W.2d 846 and others too numerous for listing here.

The real issue in this case, as framed by the pleadings and the proof, is the question of the good faith of the insurer in the handling of the claim and conducting compromise negotiations. Therefore, in reviewing the proof in the manner as required for the determination of the correctness of the Court's action in directing a verdict, if we find from such review that the proof leaves a reasonable basis for disagreement among reasonable minds on the issue of the good faith of the insurer, the issue is for determination by the jury. Southern Fire & Casualty Co. v. Norris (1952 E.S.) 35 Tenn.App. 657, 250 S.W.2d 785.

In the case of Southern Fire & Casualty Co. v. Norris, supra, it was stated that the absence of good faith or the presence of

bad faith on the part of the insurer could be shown by a set of facts which tended to show the idea of a willingness on the part of the insurer to gamble with the insured's money in an attempt to save its own money or any intentional disregard of the financial interests of the plaintiff in the hope of escaping full liability imposed upon it by its policy. This method of finding the presence or lack of bad faith was also used by our Supreme Court in State Auto Ins. v. Rowland (1967) 221 Tenn. 421, 427 S.W.2d 30. It is not our function at this juncture to determine whether bad faith on the part of the insurer actually existed, but it is only to determine if the proof is such that reasonable minds could find that it did exist.

■ We are of the opinion that there is evidence in this record which could constitute a reasonable basis for disagreement among reasonable minds on the issue of whether or not the defendant was guilty of not exercising good faith in its dealings with the plaintiff. This holding made by us at this point in the opinion, will explain the necessity of our description of the proof being somewhat meager. If this Court is to reverse and remand for a new trial, it should not comment on the evidence adduced at the first trial. The best way to avoid such comment is to generally limit the description of all the evidence and in particular that which warrants a reversal to a minimum.

The plaintiff was the operator of a non-owned vehicle which collided with another vehicle, in a head-on manner, when the vehicle the plaintiff was driving was admittedly on the wrong side of the road. The vehicle which plaintiff was driving was insured by Ohio Casualty Company. Plaintiff had insurance on her own vehicle with Aetna. Aetna's policy gave excess coverage to Mrs. Goings when operating the vehicle of another. Suits were filed against Mrs. Goings by occupants of the other vehicle and by passengers in the vehicle which she was driving. It was determined by the insurance companies that Ohio had the primary coverage and responsibility and Aetna's exposure was only secondary. Ohio's policy provided for limits of $10,000.00 single, and $20,000.00 total. Aetna's policy provided single limit coverage in the amount of $25,000.00.

Margaret C. Skelton was a passenger in the vehicle which plaintiff was operating and with the exception of the case of Margaret C. Skelton v. Edna Goings, all other claims were settled. The last settlement was made on May 20, 1969, which was the day of trial of one of the claims. All the settlements resulted in there remaining $9,913.75 in coverage on the Ohio policy and $17,500.00 on the Aetna policy, or a total policy limits of $27,413.75 remaining at the time of the trial of the case of Margaret C. Skelton v. Edna Goings. Mrs. Skelton's injuries were serious and from the outset Ohio felt that the liability would exceed its remaining coverage.

The insurance companies agreed that counsel for Ohio would represent Mrs. Goings in the actual trial of the remaining Skelton case. Damages were sought in the Skelton case for $175,000.00.

Mrs. Skelton's lawyers attempted settlement negotiations with counsel for Aetna on May 8, 1969, with a demand for $40,000.00. This was rejected and a counter offer was made by Aetna of $20,000.00 which, for round figure purposes, consisted of approximately $10,000.00 of Ohio money and $10,000.00 of Aetna money. By this offer Ohio's limits were exhausted, but there remained approximately $7,500.00 of Aetna money available. The lawyer for Mrs. Skelton learned of the remaining limits and informed counsel for Aetna, if Aetna would offer $27,500.00 he would recommend the offer to his client. Aetna stood on the $20,000.00 offer. On the day of trial, June 3, 1969, the lawyer for Mrs. Skelton reduced his previous figure to $25,000.00. Again, Aetna stood on the $20,000.00 offer. During trial, counsel for Aetna was advised that if Aetna would offer $23,000.00 such figure would be recommended to Mrs. Skelton. Again, Aetna

stood on the $20,000.00 offer. The case went to the jury and they returned a verdict for $47,721.00 which, by remittitur, was reduced to $35,000.00. This amount left a deficiency owed by Mrs. Goings of $7,586.28.

In her declaration against Aetna, Mrs. Goings charged Aetna with negligence in the handling of the claim against her by, among other things, not properly investigating the claim and defending the suit. Further, that Aetna arbitrarily rejected offers to settle within the policy limits when they knew that a substantial verdict, probably in excess of the coverage, would be rendered against the insured, and never advised her of any of the offers to settle.

Although liability on the part of Mrs. Goings was never actually admitted, it was an accepted fact by counsel for Aetna that in all probability the jury would find against her on the issue of liability. Mrs. Going's explanation for being on the wrong side of the road was that something seemed to be wrong with the steering on the vehicle she was driving. No proof was adduced on that point in the accident suit except the testimony of Mrs. Goings and such defense was not specially pleaded. The claims agent for Aetna admitted that the case was really a question of "how much". On May 6, 1969, Mrs. Goings wrote the Claim Representative for Aetna as follows: "You will appreciate, I'm sure, that I will find any suggestions you may give me to be helpful because I have no acquaintance with these matters and I rely upon my insurance to safeguard my interest."

The foregoing description of the facts is undisputed.

Mrs. Goings testified to the effect that she thought there was only $25,000.00 in coverage as she was so advised by Aetna; that after the other cases were settled she did not know what she had remaining in the way of coverage. She further testified that counsel failed to keep her advised of what was the actual situation as to her remaining coverage. She admitted that counsel for Ohio who was active in the trial of the Skelton case, at one time advised her that Aetna had offered $20,000.00 in settlement but she maintained she was never advised what demands had been made by Mrs. Skelton other than the amount shown on her summons of $175,000.00. Also, Mrs. Goings testified that counsel for Aetna never told her anything about any offers to settle and that she never knew that the case could have been settled within policy limits. Also, Mrs. Goings testified that counsel for Aetna nor anyone else ever told her she could win the case or ever discussed with her or sought her approval or advice or gave her any advice concerning the rejection of the $27,500.00 offer, the $25,000.00 offer or the $23,000.00 offer.

Counsel for Aetna denied the testimony of Mrs. Goings in this regard and testified that at all times she was kept advised of the negotiations and was aware of the limits remaining.

Without going further into the proof, we hold that this disputed issue alone, as outlined in the two previous paragraphs as applied to the other facts of the case constitutes a material and determinative issue of fact which should have been considered by a jury.

Counsel for appellee contends that all the proof shows that Aetna made an honest business judgment as to the value of Mrs. Skelton's claim against Mrs. Goings and just because hindsight has proven them wrong is no cause to hold them liable for bad faith. The Tennessee cases of Alford v. National Emblem Insurance Company (1971) Tenn., 469 S.W.2d 375 and Perry v. United States Fidelity & Guaranty Company (1962 W.S.) 49 Tenn.App. 662, 359 S.W.2d 1, among others are relied upon for this proposition.

We are of the opinion that it is not the law of this state that in order to escape liability for bad faith all an insurer has to do is to make what it believes to be an hon-

est dollar evaluation of the claim against the insured. It is from all of the relevant circumstances that the issue of good faith is to be determined. If this were not so, all that would have to be done by an insurer in every case is to make that honest dollar evaluation offer and refuse all further negotiations. All without the knowledge of the insured.

In Southern Fire & Casualty Co. v. Norris, supra, it was held that the insurer must also consider the impact of its decision upon its insured and deal fairly and in good faith. It was further held in that case that a failure to keep an insured advised is suggestive of indifference to the trust imposed by the policy which, in turn, may raise an inference of bad faith. The alleged failure to keep the insured properly advised was the main factual dispute in the instant case.

■■ As we understand the law of this state, it is the duty of the insurer in those cases where there is little, if any, doubt about the insured's liability to keep the insured advised of all offers of settlement which could reasonably affect the insured's position. The question of whether or not such was done is a material fact to be considered by the jury in determining the issue of good faith. The lack of good faith is generally shown by the circumstances of the dealings between the parties. When there is a dispute over a material factual circumstance, the case must go to the jury. We believe that all of our reported cases on the good faith issue between insurer and insured are supportive of this view. Some of which are State Auto Ins. v. Rowland, supra, Perry v. United States Fidelity & Guaranty Company, supra, Alford v. National Emblem Insurance Company, supra, and Aycock Hosiery Mills v. Maryland Casualty Co. (1928) 157 Tenn. 559, 11 S.W.2d 889.

The case of Alford v. National Emblem Insurance Company, supra, is relied upon by counsel for appellee in support of the Trial Judge's action in directing a verdict.

We believe that the Alford case is readily distinguishable from the one now before us. In that case no offer was made by the insurance company as they justifiably were of the opinion that the insured was not liable and would win the case. The Supreme Court held that such action on the part of the insurer under those facts did not constitute bad faith. In the instant case the insurer had no real hope that the insured could prevail.

Perry v. United States Fidelity & Guaranty Company, supra, is also relied upon by counsel for appellee. In the Perry case, there was a valid question of the insured's liability in the case which the insurer was defending. It is clearly brought out in the opinion of this Court written by Judge Avery that the insured thought he was not liable and was at all times of the opinion that he would win the case. The insured's private counsel was also of that conviction. It would seem strange to us indeed if an insured who had advice of private counsel and who maintained at all times, that he would win the suit against him, was not negligent, not liable and owed nothing to a plaintiff, could, after an adverse verdict is rendered, successfully claim that the insurer was guilty of bad faith for having taken the exact same position espoused by the insured.

We see no reason to prolong this opinion by discussing each case cited by counsel for appellant or appellee, suffice it to say that we hold that in this case there was adduced disputed evidence of a material nature from which evidence, considered with all other evidence and circumstances, a jury could conclude that the insurer possessed or displayed an intent or "a willingness to gamble with the insured's money in an attempt to save its own money" or "an intentional disregard of the financial interests of the plaintiff in the hope of escaping full liability imposed upon it by its policy." This being true, the question of good faith was for the jury.

It results that the appellant's first Assignment of Error is sustained and the

cause is remanded for a new trial. Attorney fees are not to be considered as an element of damages on the new trial.

Cost below will await the outcome of the new trial, but costs of appeal are adjudged against the appellee and surety on its bond.

CARNEY, P. J., and MATHERNE, J., concur.