# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

ROBERT A. HEWGLEY,　　　　　)
DEANE PRITCHETT, and　　　　)
H. MEL WEAVER,　　　　　　　)
　　　　　　　　　　　　　　　)
　　　　Plaintiffs/Appellees,　)
　　　　　　　　　　　　　　　)　　Coffee Chancery
　　　　　　　　　　　　　　　)　　No. 94-151
VS.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　)　　Appeal No.
　　　　　　　　　　　　　　　)　　01-A-01-9506-CH-00266
JOSE A. VIVO and wife,　　　　)
PEGGY M. VIVO,　　　　　　　)
　　　　　　　　　　　　　　　)
　　　　Defendants/Appellants.　)

**FILED**

**March 5, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT FOR COFFEE COUNTY
AT MANCHESTER, TENNESSEE

THE HONORABLE JOHN W. ROLLINS, JUDGE

For the Plaintiffs/Appellees:

Robert F. Hazard
Copeland, Conley & Hazard
Tullahoma, Tennessee

For the Defendants/Appellants:

Frank Van Cleave
Ray & Van Cleave
Tullahoma, Tennessee

## AFFIRMED IN PART; REVERSED IN PART;
## AND REMANDED

# **O P I N I O N**

This appeal involves the enforcement of a 47-year-old restrictive covenant in a residential subdivision in Tullahoma.  After a physician converted one of the homes in the subdivision into a medical clinic, a group of property owners filed suit in the Chancery Court for Coffee County seeking declaratory and injunctive relief to enforce a restrictive covenant requiring the property in the subdivision to be used for residential purposes.  The trial court, sitting without a jury, determined that the restrictive covenant remained enforceable, directed the physician to remove an illuminated exterior sign, and awarded attorney's fees to the property owners.  On this appeal, the physician takes issue with the enforcement of the restrictive covenant and with the award of attorney's fees.  While we affirm the enforcement of the restrictive covenant, we reverse the award of attorney's fees.

## I.

John Harton developed a 37-lot residential subdivision on the outskirts of Tullahoma in early 1950.  Eleven of the lots fronted on North Jackson Street; while the remaining lots were arranged along Jackson Circle, a U-shaped road running through the subdivision.  The deed to each lot contained a restrictive covenant limiting the use of the lots to residential purposes and authorized any of the subdivision's property owners to bring suit to enforce the covenants.

The subdivision has remained residential despite the development of the surrounding area. The golf course originally located to the west of the subdivision has been replaced by a high school.  North Jackson Street has been expanded from two to five lanes. In addition, a hospital has been built in the area, and numerous commercial and retail establishments, including a shopping mall, have been constructed along North Jackson Street across from the subdivision.

Dr. Jose A. Vivo and his wife purchased one of subdivision lots fronting on North Jackson Street in 1993.  Even though he was aware of the restrictive

covenants in his deed, Dr. Vivo decided to convert the residence into a medical clinic because he believed that the noise, pollution, and traffic in the area rendered the location unsuitable for residential purposes. Accordingly, he had the property re-zoned and began making alterations in 1994 including paving the front yard for a parking lot, building an additional room on the back of the house, and erecting an illuminated sign near North Jackson Street.

Several subdivision residents opposed Dr. Vivo's plans from the beginning. Deane Pritchett told Dr. Vivo that he and other neighbors objected to commercial use of the property and later opposed Dr. Vivo's request for a zoning change. After Dr. Vivo obtained the zoning change, Mr. Pritchett, Robert A. Hewgley, and H. Mel Weaver filed suit in the Chancery Court for Coffee County seeking both a declaration that the restrictive covenant requiring the property in the subdivision to be used for residential purposes was enforceable and an injunction to prevent Dr. Vivo and his wife from violating the restrictive covenant. In March 1995, the trial court upheld the validity of the restrictive covenant, ordered Dr. Vivo to remove the illuminated sign from his front yard, and enjoined Dr. Vivo and his wife from using the property for commercial purposes. The trial court also ordered the Vivos to pay the prevailing property owners $2,500 to defray their legal expenses. Dr. Vivo and his wife appealed to this court, and the trial court stayed the judgment pending appeal.

## II.
### THE RESTRICTIVE COVENANT

The Vivos' principal argument on this appeal is that the trial court erred by enforcing the restriction in their deed that requires them to use their property as a residence. They argue that the restrictive covenant no longer benefits the property because of the substantial changes in the character of the surrounding property. While extensive commercial development has occurred in the area surrounding the subdivision, we concur with the trial court's conclusion that enforcing the restrictive covenant will benefit the subdivision as a whole.

# A.

Persons who develop property may place restrictions on its future use for their own benefit and for the benefit of the other property owners in the development. *Laughlin v. Wagner*, 146 Tenn. 647, 653, 244 S.W. 475, 476-77 (1922); *Benton v. Bush*, 644 S.W.2d 690, 691 (Tenn. Ct. App. 1982). These restrictions are commonly known as restrictive covenants. They need not have specific time limits, *Elm Hill Homes, Inc. v. Jessie,* 857 S.W.2d 566, 571 (Tenn. Ct. App. 1993), and are binding on remote grantees when they appear in the chain of title or when the grantee actually knew about the restrictive covenant when it acquired title. *Land Developers, Inc. v. Maxwell,* 537 S.W.2d 904, 913 (Tenn. 1976); *Hillis v. Powers,* 875 S.W.2d 273, 274 (Tenn. Ct. App. 1993); *Stracener v. Bailey,* 737 S.W.2d 536, 539 (Tenn. Ct. App. 1986).

Like other contracts, restrictive covenants are enforceable according to the clearly expressed intent of the parties. *Jones v. Englund,* 870 S.W.2d 525, 529 (Tenn. Ct. App. 1993). Grantees under a common development plan may enforce their rights under a restrictive covenant against other grantees. *Turnley v. Garfinkel,* 211 Tenn. 125, 130, 362 S.W.2d 921, 923 (1962); *Benton v. Bush,* 644 S.W.2d at 692. The remedies available include injunctive relief, *Lowe v. Wilson* 194 Tenn. 267, 269, 271, 250 S.W.2d 366, 367, 368 (1952), or compensatory damages. *Hysinger v. Mullinax,* 204 Tenn. 181, 189, 319 S.W.2d 79, 83 (1958).

In most circumstances, restrictive covenants cannot be released without the consent of the purchasers and grantees for whose benefit they were imposed. *Ridley v. Haiman,* 164 Tenn. 239, 247, 47 S.W.2d 750, 752 (1932). Restrictive covenants can, however, lose their force when they fail to serve a useful purpose. *Elm Hill Homes, Inc. v. Jessie,* 857 S.W.2d at 571. Thus, they may be rendered unenforceable if radical changes in the character of the entire neighborhood completely defeat the purpose of the covenant. *Land Developers, Inc. v. Maxwell,* 537 S.W.2d at 917. When determining whether a restrictive covenant continues to serve any useful purpose, the courts must be concerned primarily with the continuing value of the restrictive covenant to the entire neighborhood, not the

hardship to the parties attempting to avoid the restrictive covenant. *Hackett v. Steele,* 201 Tenn.120, 127, 297 S.W.2d 63, 66 (1956); s*ee also* 5 Richard R. Powell & Patrick J. Rohan, *The Law of Real Property* ¶ 679[2] (1994). While rezoning of property covered by a restrictive covenant is some evidence of a change in the character of the use of the property, rezoning alone does not require the courts to conclude that the restrictive covenant no longer serves a useful purpose. *Hysinger v. Mullinax,* 204 Tenn. at 186-87, 319 S.W.2d at 82; *Hackett v. Steele,* 201 Tenn. at 132, 297 S.W.2d at 68.

## B.

During the past forty years, the City of Tullahoma has sprawled toward and past the subdivision involved in this case. Extensive commercial development has unquestionably taken place along North Jackson Street, and this development, along with its accompanying noise, pollution, and congestion, has affected the residential desirability of the houses facing North Jackson Street. But notwithstanding the development of the surrounding area, most of the property in the subdivision has retained its residential character.

The value of the protection afforded to residential property by restrictive covenants is reflected in the price of the property. Purchasers of residential property will pay a premium for the protections that restrictive covenants provide. *See Ridley v. Haiman,* 164 Tenn. at 253-54, 47 S.W.2d at 754. While the value of the front-tier lots in a subdivision may decline because of the development of the surrounding property, this decline in value does not render the restrictive covenants unenforceable as to the front-tier lots if the surrounding development has not altered the residential character of the subdivision as a whole. *Hackett v. Steele,* 201 Tenn. at 131, 297 S.W.2d at 67-68; *Hawthorne v. Realty Syndicate, Inc.,* 268 S.E.2d 494, 499 (N.C. 1980) (noting that "an island is not made a swamp simply because waves lick at its shores").

The Vivos' arguments to excuse them from honoring the restrictive covenants in their deed have two significant shortcomings. First, the commercial development along North Jackson Street has not altered the essential character of the entire subdivision. Second, the commercial development had already occurred by the time the Vivos purchased the property. They are not entitled to equitable relief when they knew or should have known that the existing conditions would affect the residential use of their property and when they have already benefitted from the effects of the surrounding development by paying a lower price for the property.[1]

## III.

### THE AWARD FOR LEGAL EXPENSES

The Vivos also take issue with the decision to require them to pay $2,500 of their adversaries' legal expenses. They assert that the facts of this case do not warrant departing from the "American Rule" requiring civil litigants to bear their own legal expenses. We agree that the property owners who filed suit to enforce the restrictive covenants should be responsible for their own legal expenses.

### A.

Tennessee's courts follow the "American Rule" with regard to awarding attorney's fees. They will not compel losing parties to pay the legal expenses of prevailing parties unless such fee-shifting is authorized by statute, contract, or some other recognized equitable ground. *Kultura, Inc. v. Southern Leasing Corp.,* 923 S.W.2d 536, 540 (Tenn. 1996); *Kimbrough v. Union Planters Nat'l Bank,* 764 S.W.2d 203, 205 (Tenn. 1989). Thus, a prevailing litigant cannot ordinarily collect attorney's fees no matter "however wrongful may have been the suit, or however groundless the defense." *Corinth Bank & Trust Co. v. Security Nat'l Bank,* 148 Tenn. 136, 154, 252 S.W. 1001, 1006 (1923).

---

[1]Dr. Vivo conceded that one of the most important considerations in the purchase of the property on North Jackson Street was its low cost.

We have recognized a narrow exception to the "American Rule" for slander of title actions involving the willful publication of false and malicious statements disparaging another's interest in real or personal property by persons who recognize or should recognize that the statements are likely to cause pecuniary harm. *See* Restatement (Second) of Torts § 624 (1977). After recognizing that the sole way to dispel another's wrongful assertion of title is to retain a lawyer and litigate, this court held that the litigation expenses, including attorney's fees, incident to a slander of title action were part of the prevailing property owner's damages. *Ezell v. Graves,* 807 S.W.2d 700, 702-03 (Tenn. Ct. App. 1990); *see also Brooks v. Brake*, App. No. 01A01-9508-CH-00365, 1996 WL 252322, at * 3-4 (Tenn. Ct. App. May 15, 1996) (No Tenn. R. App. P. 11 application filed); *Harmon v. Shell,* App. No. 01A01-9211-CH-00451, at *5 (Tenn. Ct. App. Apr. 27, 1994) (No Tenn. R. App. P. 11 application filed).

**B.**

In this case, the prevailing property owners base their claim for attorney's fees on a provision in the restrictive covenant stating that

> it shall be lawful for any other person or persons owning any real property situated in said development or sub-division to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such Covenant and to prevent him or them from so doing or to recover damages or other dues for such violation.

The property owners insist that "damages or other dues" referred to in the covenant include attorney's fees. We do not agree.

Attorney's fees are not ordinarily an element of contract damages. *Stringfield v. Hirsch,* 94 Tenn. 425, 437-38, 29 S.W. 609, 613 (1895); *Goings v. Aetna Cas. & Sur. Co.,* 491 S.W.2d 847, 848 (Tenn. Ct. App. 1972). Accordingly, a contract must contain an express provision for the payment of attorney's fees in order to enable a prevailing party to recover the legal expenses it incurred to enforce the contract. *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985)*; Pinney v. Tarpley*, 686 S.W.2d 574, 581 (Tenn. Ct. App. 1984).

-7-

We do not construe the language of the restrictive covenant in this case as enabling property owners to collect their attorney's fees if they file suit to enforce a restriction in their deeds. The reference in the restrictive covenant to "damages or other dues" refers to the damages traditionally associated with breaches of restrictive covenants. These damages include either nominal damages or actual damages measured by the reduction in property values caused by the breach of the restrictive covenant. *Womack v. Ward,* 186 S.W.2d 619, 620 (Tenn. Ct. App. 1944).

Thus, we find that the property owners' claim for attorney's fees based on the language of the restrictive covenants must fail. The property owners likewise failed to demonstrate any other recognized equitable ground for awarding them attorney's fees or any basis for including their claim within the holding of *Ezell v. Graves*. Accordingly, the trial court had no basis for awarding attorney's fees in this case and the portion of the judgment directing the Vivos to pay $2,500 of their adversaries' legal expenses must be reversed.

## IV.

We affirm the portion of the judgment enforcing the restrictive covenants but reverse the portion of the judgment awarding attorney's fees to Messrs. Hewgley, Pritchett, and Weaver. We remand the case for whatever further proceedings may be required and tax the costs of this appeal in equal proportions to Jose A. and Peggy M. Vivo and their surety and jointly and severally to Messrs. Hewgley, Pritchett, and Weaver for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
HENRY F. TODD, P.J., M.S.

_____
BEN H. CANTRELL, JUDGE

-8-