# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### MARCH 2000 Session

## SUSAN TRABUE HOWARD v. ROBERT MARK HOWARD

**Direct Appeal from the Chancery Court for Williamson County**
**No. 15223-R4; The Honorable J. Russell Heldman, Chancellor**

---

**No. M1999-00670-COA-R3-CV - Filed August 31, 2000**

---

This appeal arises from a dispute over a contractual provision in a Marital Dissolution Agreement ("MDA") between the parties. Susan Trabue Howard ("Mother") filed a Petition for Enforcement of Contractual Obligation, alleging that Robert Mark Howard ("Father") had failed to abide with a provision in the MDA providing that Father would be responsible for Daughter's "related costs of education." The court below found in favor of Mother, holding that Father was responsible for all of Daughter's expenses for the time specified in MDA. Father appeals.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which CRAWFORD, P.J., W.S., and FARMER, J., joined.

Michael E. Terry, Nashville, for Appellant

Virginia Lee Story, Franklin, for Appellee

### OPINION

The parties were divorced in 1983 by a final decree that incorporated both a property settlement agreement and an agreement regarding the support and maintenance of the parties' two children. The agreement contained an Educational Provision providing that Father would be responsible for the cost of tuition, room and board, books and other related costs associated with the children's undergraduate education. The provision limited Father's responsibility to the first of either a period of four consecutive years following each child's graduation from high school or each child's twenty-

third birthday.[1] At the time this cause of action arose, only the parties' eldest Daughter was attending college, Daughter is now twenty-three.[2]

In August 1997, Mother filed a Petition for Contempt and Modification of the agreement in the Williamson County Chancery Court. Mother alleged that Father owed more than nine thousand dollars in expenses pursuant to the Educational Provision.[3] Mother later filed an Amended Petition for Enforcement of Contractual Obligation. Both of these petitions sought money under the "related costs of education" clause contained in the Educational Provision. Mother later supplemented her previous itemized list of expenses to include various other costs. This resulted in an expense list that totaled slightly more than thirty-five thousand dollars.[4]

At trial, Father presented undisputed proof that he had paid all of Daughter's tuition, room and board, and books for the periods while she was enrolled in college.[5] In addition, Father had provided Daughter with additional cash totaling nearly fifteen hundred dollars. In the period covered under the Educational Provision, Daughter attended four different colleges and took off several semesters.

Mother acknowledged Father's contributions, but admitted that she sought reimbursement for everything that she had spent on Daughter since Daughter's graduation from high school. These expenses included a thirteen thousand dollar car bought by Mother for Daughter, car insurance and maintenance expenses, Daughter's traffic tickets and gasoline expenses, cash in the amount of nearly

---

[1] The Educational Provision states as follows:

Mr. Howard acknowledges that it is his desire that the minor children of the parties attend a college or university of their choice subsequent to graduation from high school. In accordance therewith, Mr. Howard agrees to be *individually responsible for the cost of tuition room and board, books and other related costs associated with each child's undergraduate educational process*. In order to limit the extent of Mr. Howard's obligation hereunder, it is agreed that his financial responsibility under this paragraph shall not exceed the cost which would be incurred were the children to attend the University of Tennessee in Knoxville. This is not to suggest that it is the desire of the parties that said children attend said university, but the cost were the children to attend the University of Tennessee shall be utilized as a guideline in placing a limitation on Mr. Howard's responsibility hereunder. The parties agree that Mr. Howard shall be individually responsible for the undergraduate educational process of each of the minor children *to cover a period of four (4) consecutive years after their respective high school graduation or until each child becomes twenty-three (23) years of age, whichever event first occurs*. (emphasis added)

[2] The parties' youngest daughter is not attending college and therefore not subject to the educational provision.

[3] Mother also asked for an increase in child support that was later granted by an agreed order of the parties. The increase in child support is not at issue on appeal.

[4] The total listed on the statement was actually $39,421. Although this figure is the result of a mathematical error, the court used this figure in awarding relief to Mother.

[5] Father did not pay room and board money to Daughter for the period between August 1995 and May 1996. During this period Daughter was working full time and attending college at night (a total of 9 credit hours). Daughter either lived with Mother or maintained an apartment during this period. Father did pay for Daughter's tuition and books and provided her with $630 in cash.

six thousand dollars for money given to Daughter by Mother regardless of whether Daughter was or was not enrolled in college when the payments were made, approximately three thousand dollars to pay off Daughter's credit card bills, clothes, furniture, and moving expenses totaling nearly six thousand dollars, and other miscellaneous expenses.[6]

The court found for Mother in the amount of thirty-nine thousand four hundred and twenty-one dollars, holding that the abovementioned expenses fell under the "other related costs" clause in the Educational Provision.[7] In explaining his ruling, the Chancellor stated that Father had agreed to be financially responsible for the undergraduate educational process of Daughter for four consecutive years of college or until she became twenty-three years of age. According to the Chancellor, Father's duty continued until Daughter reached the age of twenty-three, because she had not attended college for a consecutive period of four years. Father appeals.[8]

On appeal, Father asserts that the trial court erred in its interpretation of the Educational Provision. In particular, Father asserts that the trial court's decision effectively makes Father responsible for all expenses incurred on Daughter's behalf, regardless of whether or not she was enrolled in college. In addition, Father claims that the trial court erred in holding that Father's financial responsibility toward Daughter automatically continued until Daughter reached the age of twenty-three. Mother seeks attorney's fees incurred at both the trial level and on appeal.

**ANALYSIS**

The standard of review for a non-jury case is de novo upon the record. Wright v. City of Knoxville, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's factual findings, unless the "preponderance of the evidence is otherwise." TENN. R. APP. P. Rule 13(d). For issues of law, the standard of review is de novo, with no presumption of correctness. Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996). In the case at bar, the only issue involves the trial court's interpretation of the Educational Provision in the MDA. The interpretation of a written agreement is a matter of law and not of fact, therefore, our review is de novo on the record with no presumption of the correctness of the trial court's conclusions of law. Union Planters Nat'l Bank v. American Home Assurance Co., 865 S.W.2d 907, 912 (Tenn. App.1993).

---

[6]These miscellaneous expenses included a dress and gift for a wedding attended by Daughter, money for Daughter's entertainment, and money for a trip to Florida made by Daughter.

[7]At the time he made his ruling, the judge apparently encouraged Father to appeal, stating that the ruling was inequitable.

[8]Father filed several post trial motions to alter or amend the ruling and seeking a new trial. Only Father's motion to stay was granted.

A marital dissolution agreement is essentially a contract between a husband and wife in contemplation of divorce proceedings. See Gray v. Estate of Gray, 993 S.W.2d 59, at 63 (Tenn. Ct. App. 1998) citing Towner v. Towner, 858 S.W.2d 888 (Tenn.1993). Therefore, the provisions in a MDA are subject to the same rules of interpretation as those that apply to contracts. The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles. Winfree v. Educators Credit Union, 900 S.W.2d 285, 289 (Tenn. Ct. App.1995); Rainey v. Stansell, 836 S.W.2d 117, 118 (Tenn. Ct. App.1992). In construing contracts, the words expressing the parties' intentions should be given their usual, natural, and ordinary meaning. Taylor v. White Stores, Inc., 707 S.W.2d 514, 516 (Tenn. Ct. App.1985). In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may seem harsh or unjust. Heyer-Jordan & Assocs. v. Jordan, 801 S.W.2d 814, 821 (Tenn.App.1990).

An ambiguity in a contract is characterized as doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one. Hillis v. Powers, 875 S.W.2d 273, 276 (Tenn. App.1993). However, the parties to a contract cannot create an ambiguity where none exists. Edwards v. Travelers Indemnity Co., 201 Tenn. 435, 300 S.W.2d 615, 617-618 (1957). "Where there is no ambiguity, it is the duty of the court to apply to the words used their ordinary meaning and neither party is to be favored in their construction." Heyer-Jordan & Assoc. v. Jordan, 801 S.W.2d 814, 821 (Tenn. App.1990).

## A. "Other Related Costs"

With the foregoing principles in mind, we will examine the MDA. In particular, the case below centers on the interpretation of two sentences found in the Educational Provision of the parties' MDA. The first sentence reads as follows: "In accordance therewith, Mr. Howard agrees to be individually responsible for the cost of tuition room and board, books and *other related costs* associated with each child's undergraduate educational process" (emphasis added). Essentially, Mother argues that "other related costs" means "all costs" whether or not they are actually related to Daughter's education. According to Mother, Father is responsible for every penny spent on Daughter, regardless of whether Daughter was enrolled in college at the time the expenses were incurred and regardless of the purpose of the expenses. We do not agree.

In accordance with the principles stated above, we must consider both the parties' intention when making this agreement and the actual meaning of "other related costs." Clearly, at the time this agreement was made, Father intended to provide Daughter with the opportunity to attend college. We are unpersuaded that Father intended to bear all expenses Daughter incurred during this period, regardless of their origin. In addition, "other related costs" must be given its usual, natural, and ordinary meaning. This Court can neither broaden nor restrict the meaning of those words. Accordingly, we find it impossible to construe the words to mean Father is financially responsible for all of Daughter's expenses. While every struggling undergraduate would no doubt enjoy the use of a car, extra money to take trips, and a constantly updated wardrobe, these things are by no means

-4-

"other related costs" essential to the educational process. Accordingly, we find that the trial court erred in holding Father responsible for these and several other questionable expenses. Therefore, this issue is remanded to the trial court with the intent that the court review each expense to determine whether it is a cost related to the educational process.

### B. Time Period

We now turn to the remaining sentence at issue in the Educational Provision of the MDA. This sentence states: "The parties agree that Mr. Howard shall be individually responsible for the undergraduate educational process of each of the minor children *to cover a period of four (4) consecutive years after their respective high school graduation or until each child becomes twenty-three (23) years of age, whichever event first occurs*" (emphasis added). The court below interpreted this provision to mean Father's financial responsibility to Daughter does not end unless she remains in college for four consecutive years or until she becomes twenty-three. The trial court found that since Daughter's college attendance had not been continuous, the time period did not run and Father's responsibility automatically terminated when Daughter reached twenty-three. We do not agree.

We find that the parties intended to provide for Daughter's education for four consecutive years, with the triggering event being Daughter's graduation from high school and first enrollment in college. The parties divorced in 1983, and Daughter did not graduate from high school until May 1994, some eleven years later. She first enrolled in college in August 1994. Therefore, at the latest, Father's financial responsibility for Daughter's educational expenses terminated in August 1998. The time period continued to accrue regardless of whether or not Daughter was actually attending college. The age provision simply represented a cap on Father's obligation so that, in no event, would he be obligated beyond the child's twenty-third birthday. Father could not have known when the agreement was signed how long it might require for the children to graduate from high school, and the agreement protected him from potentially prolonged delay in the children's educational expenses. This interpretation is consistent with both the intent of the parties as well as the ordinary and natural meaning of the words. Accordingly, the trial court is reversed on this issue.

### Attorney's Fees

Mother's request for attorney's fees incurred both on the trial level and on appeal is hereby denied. Without an express agreement to pay attorney's fees for enforcement of a contract, such fees are not recoverable. Pinney v. Tarpley, 686 S.W.2d 574, at 581 (Tenn. Ct. App. 1984) citing Stringfield v. Hirsch, 94 Tenn. 425, 29 S.W. 609 (1895); Goings v. Aetna Cas. & Sur. Co., 491 S.W.2d 847 (Tenn. Ct. App.1972).

**CONCLUSION**

For the foregoing reasons, the decision of the trial court is hereby reversed and remanded. Costs of appeal are taxed one half to Appellant, Robert Mark Howard, and one half to Appellee, Susan Trabue Howard, for which execution may issue, if necessary.

_____
ALAN E. HIGHERS, JUDGE