**Frank CHILDRESS and Frank Childress Buses, Inc., Plaintiffs–Appellants,**

v.

**SULLIVAN COUNTY BOARD OF EDUCATION, Defendant–Appellee.**

Court of Appeals of Tennessee, Western Section, at Knoxville.

Dec. 8, 1988.

Permission to Appeal Denied by Supreme Court March 27, 1989.

M. Lacy West, Kingsport, for plaintiffs-appellants.

Charles T. Herndon IV, Johnson City, D. Patrick Hull, Kingsport, for defendant-appellee.

CRAWFORD, Judge.

This is a breach of contract case. The plaintiffs, Frank Childress and Frank Childress Buses, Inc. (hereinafter Childress), appeal from the judgment of the trial court dismissing their suit against defendant, Sullivan County Board of Education (hereinafter Board).

In October 1985, Childress and the Board were parties to 24 contracts, each for the operation of a school bus in Sullivan County. Twelve of the contracts were entered into on May 12, 1984, and 12 of the contracts were entered into on July 1, 1985. All of the contracts were for a period of four years and obligated Childress to furnish the described bus for a school bus route designated by the Board for which he would be paid the compensation provided in each contract.

We quote the pertinent parts of the contracts:

SCHOOL BUS CONTRACT

\*    \*    \*    \*    \*    \*

WITNESSETH·

\*    \*    \*    \*    \*    \*

1. The Contractor agrees to operate a school bus or buses for the purpose of transporting school children to and from school, at the times and along a specific bus route which shall be furnished to Contractor from time to time. The Board or its agents shall designate the route to be followed, the times of pick up, arrival and departure and the school or schools which shall be serviced by the Contractor. *All buses used shall be provided by Contractor and it shall be Contractor's responsibility to maintain such buses in good, safe, working order.* All bus drivers must be appropriately licensed, competent, responsible individuals and shall be employees of Contractor and must not be considered for any purpose as employees of the Board.

\*    \*    \*    \*    \*    \*

8. It is understood and agreed by both parties that officials of the State of Tennessee shall conduct one or more bus inspections each year, and that no bus shall ever be used by Contractor which fails to pass State bus inspection, provided that Contractor may use and operate a new bus which has not been inspected until the first such inspection by State officials.

\* \* \* \* \* \*

10. Contractor shall bear the costs of all maintenance, repair or replacement of any equipment as to any school buses used by the Contractor in the carrying out of this contract.

11. It is specifically understood and agreed that the Board and Contractor must and shall abide by Federal, State, and County laws, rules and regulations for equipment and operation of school buses, except as any minimum rules and regulations might be increased in this Agreement. Such statutes, rules and regulations of the Federal government, the State of Tennessee and the Board as they now exist or as amended from time to time are incorporated herein by reference the same as if set out verbatim, and if the statutes, rules and regulations should conflict with the terms of this Agreement, then this Agreement shall be modified to conform to any such statutes, rules and regulations. Additionally, *both parties understand and agreed [sic] that strict adherence to the provisions of the contract, and to the bus routes (including, not limited to starting points, destinations, and times of departure and arrival) is necessary to the adequate fulfillment of this agreement. For repeated violations of or failures to adequately fulfill this contract, the Board may within its sole discretion, terminate this contract.* Failure to terminate shall not constitute a waiver of the Board's right to terminate for subsequent violations of or failure to adequately fulfill the contract.

\* \* \* \* \* \*

19. In the event of default of this contract by the Contractor, the Contractor agrees to pay to the Board any expenses (including but not limited to attorney's fees and court costs) incurred by the Board in the enforcement of the Board's rights under this contract, either in court or by other means. (Emphasis added).

The State of Tennessee Department of Pupil Transportation annually inspects the school buses in a procedure termed a Class 1 Inspection, which is a visual inspection of 57 items. On occasion, the Department conducts another type of inspection termed a Class 2 Inspection where parts are removed and examined individually.

The record reveals that the state's 1984 Class 1 inspection of the Childress buses was performed on September 10 and 11 of 1984. Although the school bus operators were requested to use the summer months when they were not operating the buses to do necessary maintenance and repairs, the 1984 Class 1 inspections on Childress buses resulted in only two of the buses passing without defects.

The 1985 Class 1 inspections were conducted on September 9 and 10, 1985, shortly after the school term began and again, although the maintenance and repairs on the buses were to be done in the summer months, only five out of the 24 buses involved herein passed without defects.

On September 12, 1985, a serious accident occurred involving one of the Childress buses which injured several pupils. The superintendent of education received many complaints following this accident and when the State of Tennessee Department of Pupil Transportation was notified, it ordered Class 2 safety inspections on three of the Childress buses. These inspections revealed that these particular buses were totally unsafe for pupil transportation. Because of the conditions found on the Class 2 inspections and the results of the previous Class 1 inspections, a representative of the Department of Pupil Transportation recommended to the Sullivan County Board of Education that use of the Childress buses be suspended until all buses could be thoroughly examined. The Board followed the department's recommendation and suspended Childress' opera-

tion. After a called meeting of the Sullivan County Board of Education held October 18, 1985, the Board terminated each of Childress' 24 contracts. Childress thereupon filed this suit for breach of contract. At a subsequent meeting, the Board allowed Childress to transfer the contracts and equipment to other operators.

At the conclusion of the trial, the trial court found that the majority of the Childress buses had numerous and serious deficiencies and that Childress did not have any regular maintenance schedule for his buses. The court stated:

The Plaintiff has given testimony here, and he has admitted that he did not have a regular maintenance schedule that covered any of the twenty-four buses in question. He did do work on the buses, but he did not have a regularly scheduled maintenance program on the buses, and he also told the State Inspector that. He has filed in evidence, though, as an exhibit here—I believe it's Exhibit 33—his records, though, for the work that he did do on the buses, when he performed work. I would have to conclude from what has been testified here throughout the trial that most of the repairs that Mr. Childress performed on the buses was when these buses broke down, or when the State Inspections revealed deficiencies and they had to be corrected. He would have had the buses with him or within his control and out of operation during all of the summer months, and one would think that all the buses would be in good running order when the school year started, but the State inspections in both 1984 and 1985, totally destroy that concept. In 1985 many of the vehicles that were used were in need of very extensive repairs and repairs of a major mechanical nature. The Department of Safety came in and conducted inspections on October 16 and 17, after going through all these examinations in September of '85, and at that time as a result of those examinations, they grounded five buses: Bus 109, which Mr. Childress had owned up until a few days previous to that; Bus number 5, which

he had owned up until a few days previous to that; Bus 126, Bus 92 and Bus 96, which he, of course, owned at the time of the examinations. These five buses were not fit to put upon the road. They were unsafe, in the Court's opinion, and they were not in good mechanical working order. As a result of that investigation the Department of Safety turned around and had second thoughts about the whole fleet of buses and a letter was written, Exhibit number 46, dated October 18, 1985, to Superintendent Fleming and Members of the School Board, saying that the inspections in October had identified a very dangerous and concerning pattern of safety violations on the equipment owned and operated by Mr. Childress, and as a result of that, they were revoking all certifications issued previously on the equipment, and I guess that this caused the School Board to really get in and examine the matter and decide what they were going to do; whether they were going to assume the risk further or whether they were going to cancel the contracts. As a result of that, of course, the Board decided that this constituted a breach of the agreement that they had with the contractor, and they voted to cancel and terminate the agreements, and so notified Mr. Childress by letter dated the same day, October 18, 1985, which is Exhibit 29.

It is the Court's conclusion, as I said just a few moments ago, that the five buses that were grounded were unsafe and were not in good mechanical working order by any, by any aspect of the examination. It is further the Court's conclusion that many of the other buses inspected during September of 1985, and October of 1985, were also unsafe and were not in good mechanical working order. They were not as dangerous as the five that were grounded on the spot when the State inspected him, but they were not what I would call safe and in good mechanical working order as the agreement called for, and as the law would imply if that term had not been in the agreement, written agreement.

From the judgment dismissing the suit, Childress has appealed. Although Childress sets out six issues for review, the argument is general and does not direct itself to the specific issues presented. We will rephrase the issues as necessary.

The first issue for consideration is whether the trial court erred in dismissing Childress' complaint. Childress first asserts that the trial court erred in dismissing the complaint in toto and in not allowing recovery on Contracts 91, 95, 99, 28, 82, 127, and 123—the contracts relating to the virtually new buses. He next asserts that the trial court erred in dismissing the case in toto and not allowing recovery on all of the Childress contracts for buses which were not removed from service by the Tennessee Department of Pupil Transportation.

Childress asserts that the contracts are separate and independent and that a breach of one of the contracts does not constitute a breach of the others. We agree generally with this assertion. In 6 Williston on Contracts § 887D, at 535 (3rd ed. 1962), it is stated:

**Breach of a Separate Contract as an Excuse.** The fact that a man, bound to another by two contracts, breaks one of them frequently affords a probable indication that he will break the other; but the probability that a promisor will break his contract, based merely on the fact that he has broken other contracts and is the kind of person that breaks contracts, is not in itself such prospective failure of consideration as to excuse one under an unbroken contract with him from performing his promise when it is due.

While Childress concedes the contracts covering Buses 27, 66, 92, 126 and 120 were validly terminated under the terms of the contracts, he contends that since the other buses were not removed from service by the State of Tennessee Department of Pupil Transportation, the Board had no just cause for terminating the contracts. Childress asserts that in any event, the contracts covering Buses 91, 95, 99, 28, 82, 127 and 123 should not have been terminated because these were virtu-

ally new buses without any defects. We must disagree with Childress on all of these assertions and contentions.

As above noted, the contracts provide that the contractor is responsible "to maintain such buses in good, safe, working order." The contracts also provide that "strict adherence to the provisions of the contract ... is necessary." And further provides that "for failure to adequately fulfill this contract, the Board may within its sole discretion terminate this contract."

There is evidence in the record of numerous defects in the majority of the buses operated by Childress. The evidence also indicates that all buses, new and old, need inspection and regular maintenance in order to be maintained in good working order, and that Childress did not perform the maintenance according to the manufacturer's minimum recommendations. The trial court noted and we agree that Childress' maintenance was confined primarily to repairing defects after they were discovered.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d). From our review of the record we cannot say that the evidence preponderates against the trial court's finding that the Board justifiably terminated each of Childress' contracts because of his breach of the provisions thereof.

Childress' remaining issues as quoted in his brief are as follows:

4. Did the Trial Court err in admitting evidence of 1984 State inspection on contracts entered into on July 1, 1985?

5. Did the Trial Court err in admitting evidence of State inpsections after appellee had specifically stated the reasons for its actions in cancelling all 24 separate contracts?

6. Did the Trial Court err in admitting evidence of State inpsections of buses formerly owend by appellants but not under contract on October 18, 1985 and not subject to this litigation?

■ Childress complains of the admission into evidence of the 1984 state inspections on the buses, and the admission of the state inspection on buses that Childress had transferred prior to the contract terminations on October 18, 1985. The contracts in question required Childress to maintain the buses in good, safe, working condition. The introduction of the state inspections showing defects which could have been eliminated by proper maintenance would appear to be relevant to proving the breach of the maintenance provision in the contract. Relevant evidence is evidence that has a tendency to make existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Given v. Low*, 661 S.W.2d 687 (Tenn.App.1983). We are of the opinion that the evidence was properly admitted; however, we note that even if this evidence had been improperly admitted, the error would have been harmless since other ample evidence is in the record to support the findings of the trial court. *See* T.R.A.P. 36(b).

The Board presents the issue for review of whether the trial court erred in failing to award the Board attorney fees.

The contracts involved in this litigation provide:

> In the event of default of this contract by the Contractor, the Contractor agrees to pay to the Board any expenses (including but not limited to attorney's fees and court costs) incurred by the Board in the enforcement of the Board's rights under this contract either in court or by other means.

■ The trial court found and this Court concurs that Childress failed to perform the contracts which justified the Board's termination thereof. Default has been defined as "the omission or failure to perform a legal or contractual duty." Black's Law Dictionary 376 (5th ed. 1979). Thus, it appears that Childress' failure to perform as specified in the contracts constituted a default within the meaning of the contracts. The termination of the contracts by the Board, in itself, did not result in any attorney fees. However, Childress' suit for damages required the Board to defend and thus to incur fees and costs "in the enforcement of the Board's rights under this contract." The court should have awarded attorney fees to the Board pursuant to the provisions of the contracts. *See Goings v. Aetna Casualty & Surety Co.*, 491 S.W.2d 847 (Tenn.App.1972).

Although the record contains some evidence concerning fees claimed by the Board, we feel the better practice would be to have the trial court on remand make the determination.

Therefore, the judgment of the trial court denying the award of attorney fees is reversed, and in all other respects the judgment is affirmed. The case is remanded to the trial court for a determination by that court of the amount of fees to be awarded to the Board. Costs of the appeal are assessed against the appellant.

TOMLIN, P.J., and FARMER, J., concur.