IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
OCTOBER 10, 2007 Session

# ESI COMPANIES, INC. v. RAY BELL CONSTRUCTION COMPANY, INC., ET AL.

Direct Appeal from the Chancery Court for Shelby County
No. CH-06-0920     Walter C. Evans, Chancellor

No. W2007-00220-COA-R3-CV - Filed February 29, 2008

This appeal involves the applicability and enforceability of a forum selection clause in a construction contract. The contract was for the design and construction of a Kentucky correctional facility. The contract between the Commonwealth of Kentucky and the general contractor, a Tennessee corporation, provided that all actions on the contract must be filed in Franklin County Circuit Court in Frankfort, Kentucky. The general contractor entered into a subcontract with another Tennessee corporation for the performance of certain work on the Kentucky correctional facility. The subcontract incorporated all terms of the original contract by reference and contained a "flow-down" provision. The subcontractor later sued the general contractor in Shelby County, Tennessee. When the general contractor moved to dismiss for lack of venue, the subcontractor contended that the forum selection clause did not apply to its claims. The subcontractor also contended that the forum selection clause was unenforceable under the facts of this case. The trial court found in favor of the subcontractor. We granted the general contractor's Rule 10 application for extraordinary appeal. We reverse and remand, finding that the forum selection clause was applicable and enforceable, and the lawsuit should have been filed in Kentucky.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Gregory L. Cashion, S. Joe Welborn, Nashville, TN, for Appellant

Scott B. Ostrow, Memphis, TN, for Appellee

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Ray Bell Construction Company, Inc. (the "General Contractor" or "Design/Builder") has its principal offices in Brentwood, Tennessee. On October 8, 2001, the General Contractor entered into a "Design/Build Contract" with the Commonwealth of Kentucky, Department of Facilities Management (the "Commonwealth" or "Owner"), to design and construct a project known as the Elliott County Medium-Security Correctional Facility, located in Sandy Hook, Kentucky (the "Project"), for a total price of $76,762,000.00. The bulk of the terms and conditions of the Design/Build Contract were set out in a "Request for Proposal." The Request for Proposal contained the following provision that is central to the issues before us:

> W.     DISPUTE RESOLUTION
>
> A question or act arising under the Contract which is not disposed of by agreement may be brought to the Secretary of the Finance and Administration Cabinet pursuant to [Kentucky Revised Statutes] 45A.225 through KRS 45A.280. *Actions on the Contract shall be brought in Franklin Circuit Court, Frankfort, Kentucky* within one year from the date of completion specified in the Contract, notwithstanding the requirement to present Contract claims to the Secretary of the Finance Administration Cabinet for administrative review.
>
> Pending final determination of any dispute hereunder, the Design/Builder shall proceed diligently with the performance of the Contract and in accordance with the Secretary of the Finance and Administration Cabinet's direction.

(emphasis added). The Request for Proposal also provided:

> M.     PERSONNEL, SUBCONTRACTORS AND SUPPLIERS
>
> 1.     Subcontractor Defined: A "Subcontractor" means an entity which has a direct contract with Design/Builder to perform a portion of the Work or the Design Services. . . .
>
> . . .
>
> 3.     Terms of Subcontracts: All subcontracts and purchase orders with Subcontractors shall afford Design/Builder rights against the Subcontractor which correspond to those rights afforded to Owner against Design/Builder herein, including those rights of Contract suspension, termination, and Stop Work Orders as set forth herein. . . .

On or around August 5, 2002, the General Contractor entered into a subcontract agreement (the "Subcontract") with ESI Companies, Inc. (the "Subcontractor"), which has its principal offices in Memphis, Tennessee. Pursuant to the Subcontract, the Subcontractor would furnish and install certain detention and security equipment, metal, hardware, glass, glazing, and doors for the Project for the sum of $9,193,449.00. The Subcontract provided, in relevant part:

> This agreement entered into this 23[rd] day of January, 2002[1] by and between Ray Bell Construction Company, Inc., hereinafter called Contractor, and ESI Companies, Inc., hereinafter called Subcontractor.
> WITNESSETH, that, WHEREAS Contractor has heretofore entered into a Design/Build Contract[2] with Commonwealth of Kentucky Facilities Management Division of Contract Administration of 702 Capitol Avenue, Frankfort, KY 40601, hereinafter called the Owner, to furnish all labor and materials and perform all work required for Design & Construction of Elliott County, KY Medium Security Correctional Facility, in strict accordance with the general contractor, specifications, schedules and drawings and amendments or addenda prepared by Arch, II of Lexington, KY, and DLR Group, Inc. of Overland Park, KS Architect and/or Engineer which are made a part of said Design/Build Contract, and which are now made a part of this Subcontract insofar as they apply, and the parties heretofore desire to contract with reference to a part of said work.
> . . .
> ATTACHMENTS "A", "B" AND "C" ARE PARTS OF THIS DOCUMENT AND ESI AMENDMENT #1, PAGES 1 OF 1
> . . .
> Article VII - (a) Contractor shall have the same rights and privileges as against the Subcontractor herein as the Owner in the Design/Build Contract has against Contractor. Subcontractor shall have the same rights, remedies and privileges against the Contractor herein as the Contractor in the Design/Build Contract has against Owner.[3]
> (b) Subcontractor acknowledges that he has read the Design/Build Contract and all plans and specifications together with all amendments and addenda thereto and is familiar therewith and agrees

---

[1] The Subcontract was not signed by the parties until August of 2002, but these dates are not relevant to the outcome of this appeal.

[2] Pursuant to Attachment B to the Subcontract, all instances of the term "General Contract" were replaced with the term "Design/Build Contract."

[3] This second sentence of Article VII section (a) was added pursuant to ESI Amendment #1.

to comply with and perform all provisions thereof applicable to Subcontractor. The intent of the Contract documents is to include all items necessary for the proper execution and completion of the work. The Contract documents are complementary and what is required by any one shall be as binding as if required by all. Work not covered in the Contract documents will not be required, unless it is consistent therewith and is reasonably inferrible therefrom as being necessary to produce the intended results.

. . .

Article XII - It is understood and agreed that the laws of the State of Tennessee will govern interpretation of this contract. The provisions of this document shall be controlling should there be a conflict between its terms and the terms of any attached or referred to materials.

. . .

ATTACHMENT "B"

. . .

5) IT SHOULD BE UNDERSTOOD BY SIGNATURE OF THIS AGREEMENT THAT THE REQUEST FOR PROPOSAL PREPARED BY THE OWNER PROVIDES INFORMATION AS TO PROJECT OVERVIEW, STATUTORY LAW, MASTER PLAN AND PROGRAM REQUIREMENTS, AS WELL AS, TECHNICAL REQUIREMENTS AND PERFORMANCE FOR MATERIALS, INSTALLATION PRACTICES AND SYSTEMS OPERATION AND PERFORMANCE.

. . .

ATTACHMENT "C"

. . .

1) AS STATED HEREIN, ALL TERMS AND CONDITIONS OF THE CONTRACT BETWEEN THE COMMONWEALTH OF KENTUCKY AND RAY BELL CONSTRUCTION COMPANY, INC. ARE FULLY INCORPORATED HEREIN BY REFERENCE. WITHOUT LIMITING THE FOREGOING STATEMENT, THE CONTRACTOR WOULD SPECIFICALLY REFERENCE THE FOLLOWING TERMS FOR THE BENEFIT OF THE SUBCONTRACTOR.

A. TERMS OF SUBCONTRACT: ALL SUBCONTRACTS AND PURCHASE ORDERS WITH SUBCONTRACTORS SHALL AFFORD DESIGN/BUILDER RIGHTS AGAINST THE SUBCONTRACTOR WHICH CORRESPOND TO THOSE RIGHTS AFFORDED TO OWNER AGAINST DESIGN/BUILDER HEREIN, INCLUDING THOSE RIGHTS OF CONTRACT SUSPENSION, TERMINATION, AND STOP WORK ORDERS AS SET FORTH HEREIN. . . .

According to the Subcontractor, it performed all work required of it under the Subcontract. A dispute subsequently arose between the General Contractor and the Subcontractor, and on January 12, 2006, the Subcontractor filed a "Notice of Lien/Claim" with the Finance and Administration Cabinet of the Commonwealth of Kentucky against the funds due to the Contractor under its Design/Build Contract with the Commonwealth. The Contractor procured a bond from Fidelity & Deposit Company of Maryland to release the lien claim.

On May 10, 2006, the Subcontractor filed a complaint in Shelby County Chancery Court against the General Contractor.[4] The Subcontractor alleged that while working on the Project, it received several directives from the General Contractor to perform additional work, which caused the Subcontractor to incur unanticipated, additional costs and expenses, as well as delay damages, for which the Subcontractor had not been paid.

In response, the General Contractor filed a motion to dismiss the complaint for lack of venue. First, the General Contractor contended that the exclusive venue for the dispute was in Franklin County Circuit Court in Frankfort, Kentucky, pursuant to the forum selection clause in the Design/Build Contract that was incorporated by reference in the Subcontract. The General Contractor also claimed that it could enforce the forum selection clause against the Subcontractor because the original Owner had the right or privilege of enforcing it against the General Contractor, relying on the "flow down" provision of the Subcontract. Next, the General Contractor argued that venue was not proper in Shelby County, Tennessee, in any event, because the cause of action did not arise there, nor did the General Contractor reside in Shelby County. Finally, the General Contractor asked the trial court to dismiss the case under the doctrine of *forum non conveniens*, claiming that representatives of the Commonwealth of Kentucky and DLR Group, Inc. (a Kansas corporation that served as Project designer) would be material witnesses or possibly even third-party defendants in the case, but could not be compelled to attend trial in Tennessee. For the foregoing reasons, the General Contractor claimed that the complaint should be dismissed, and it sought an award of its attorney's fees and costs associated with filing its motion.[5]

---

[4] Subcontractor also set forth a cause of action against Fidelity & Deposit Company of Maryland as obligor on the bond, but that claim was voluntarily dismissed with prejudice and is not at issue on appeal.

[5] The General Contractor relied upon the following provision of the Subcontract, as amended by "ESI Amendment #1":

> Should Subcontractor default in any of the provisions of this Subcontract and should Contractor employ an attorney to enforce any provisions hereof, or to collect damages for breach of the Subcontract, or to recover on the bond mentioned in Article II above, Subcontractor and his surety agree to pay Contractor such reasonable attorney's fees as he may expend therein but only to the extent that such loss or damage or expense, including legal fees, expert witness fees or other litigation costs is due to the fault of the subcontractor or anyone for who[m] the subcontractor is liable. Should neither party fully prevail, recoverable fees are limited to those proportionate to the extent each side has prevailed.

Following a hearing, the chancellor entered an order simply stating that the General Contractor's motion to dismiss for lack of venue was denied. The General Contractor filed a motion requesting permission to seek an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, but the trial court denied the motion. The General Contractor then filed an application for extraordinary appeal to this Court under Rule 10 of the Tennessee Rules of Appellate Procedure, which we granted.

## II. ISSUES PRESENTED

The appellant presents the following issues for review, which we slightly restate:

1. Whether the Subcontract incorporates by reference the forum selection clause contained in the Design/Build Contract, which requires all disputes to be brought in the Circuit Court of Franklin County, Kentucky.
2. Whether the forum selection clause is enforceable.
3. Whether the trial court abused its discretion in refusing to dismiss this action under the doctrine of *forum non conveniens*.
4. Whether the trial court erred in failing to award the General Contractor its attorney's fees.

For the following reasons, we reverse the decision of the chancery court and remand for further proceedings.

## III. STANDARD OF REVIEW

The interpretation of a contract is a matter of law. ***Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999). We review a trial court's conclusions of law *de novo* with no presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)). "When resolving disputes concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." ***Guiliano***, 995 S.W.2d at 95 (citing *Hamblen County v. City of Morristown*, 656 S.W.2d 331, 333-34 (Tenn. 1983); *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975)). All of the contract provisions should be construed in harmony with each other, if possible, to promote consistency and avoid repugnancy between the various provisions of a single contract. ***Id.*** (citing *Rainey v. Stansell*, 836 S.W.2d 117, 118-19 (Tenn. Ct. App. 1992), *perm. app. denied* (Tenn. 1992)).

## IV. DISCUSSION

### A. Applicability of the Forum Selection Clause

First of all, we must determine whether the forum selection clause set forth in Section W of the Request for Proposal of the Design/Build Contract applies to suits filed by the Subcontractor

against the General Contractor. The Subcontractor contends that the forum selection clause only applies to cases between the General Contractor and the Owner, and not to actions filed by a subcontractor. The forum selection clause states, "Actions on the Contract shall be brought in Franklin Circuit Court, Frankfort, Kentucky . . . ." As support for its argument, the Subcontractor points to the fact that "the Contract" was between the Owner and the General Contractor, and the Subcontractor characterizes its claim as an action on the Subcontract, rather than an action on "the Contract." The Subcontractor claims that it did not specifically agree to the terms of the Contract between the Owner and the General Contractor, therefore it is "at best" a third party beneficiary to the Design/Build Contract. The General Contractor argues in response that the Subcontractor's claim does arise from the Contract because all terms of the Contract were incorporated by reference and made a part of the Subcontract. We agree with the General Contractor's contention, as the Subcontract clearly provided that "ALL TERMS AND CONDITIONS OF THE CONTRACT BETWEEN THE COMMONWEALTH OF KENTUCKY AND RAY BELL CONSTRUCTION COMPANY, INC. ARE FULLY INCORPORATED HEREIN BY REFERENCE." Because the terms of the Contract were expressly incorporated into the Subcontract, the language of the Contract became a part of the Subcontract, and both writings must be construed together. *See **Staubach Retail Services-Southeast, LLC v. H.G. Hill Realty Co.***, 160 S.W.3d 521, 525 (Tenn. 2005); ***T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC***, 93 S.W.3d 861, 870 (Tenn. Ct. App. 2002).

The General Contractor also argues that the forum selection clause requires the Subcontractor to file its lawsuit in Kentucky because of the following provision of the Subcontract:

> Article VII - (a) Contractor shall have the same rights and privileges as against the Subcontractor herein as the Owner in the Design/Build Contract has against Contractor. Subcontractor shall have the same rights, remedies and privileges against the Contractor herein as the Contractor in the Design/Build Contract has against Owner.

The Subcontractor does not offer any argument as to how this section affects its rights. However, we find that this provision is dispositive of the issue before us and requires the Subcontractor to file its action in Kentucky.[6] It is undisputed that the Owner had the "right" against the General Contractor to have any actions against it filed in Franklin County Circuit Court in Frankfort, Kentucky. *Black's Law Dictionary*, 8th ed. 2004, defines a "right," as used in this context, as "[a] legally enforceable claim that another will do or will not do a given act." If the General Contractor did not file its action in Kentucky, the Owner could assert the forum selection clause in order to have its right enforced. *See, e.g.*, ***Woodruff v. Anastasia Intern., Inc.***, No. E2007-00874-COA-R3-CV,

---

[6] The aforementioned provision is an example of a "flow-down" or "conduit" clause. Flow-down clauses are commonly used in subcontracts and are closely related to the concept of incorporation by reference. *See* T. Bart Gary, *Incorporation by Reference and Flow-Down Clauses*, 10 Constr. Lawyer 1, 45 (Aug. 1990). "If the clause functions as intended, the same rights and obligations of the subcontractor should flow from the subcontract up through the general contractor to the owner, and conversely down the same contractual chain." *Id.* The use of flow-down clauses "represents efforts to ensure consistency of obligations throughout the various tiers of the contracting process." *Id.* at 44.

2007 WL 4439677, at *4 (Tenn. Ct. App. Dec. 19, 2007) (speaking of a party's "right" to assert a forum selection clause defense). Pursuant to the flow-down clause, the General Contractor has the same right to enforce the forum selection clause against the Subcontractor. Similarly, the General Contractor's corresponding remedy against the Owner was to file an action in Kentucky, and pursuant to the flow-down provision, the Subcontractor has that same remedy. A "remedy" is defined by *Black's Law Dictionary*, 8th ed. 2004, as "[t]he means of enforcing a right or preventing or redressing a wrong; legal or equitable relief." In sum, we find that the flow-down provision of the Subcontract required the Subcontractor to file any actions against the General Contractor in Franklin County Circuit Court in Frankfort, Kentucky, just as the General Contractor would have proceeded with claims against the Owner.

The Subcontractor argues that if the forum selection clause in the Design/Build Contract requires it to file its suit in Kentucky, then the forum selection clause conflicts with the Subcontract and cannot be enforced. The Subcontractor relies upon the following provision of the Subcontract:

> Article XII - It is understood and agreed that the laws of the State of Tennessee will govern interpretation of this contract. The provisions of this document shall be controlling should there be a conflict between its terms and the terms of any attached or referred to materials.

It is true that the Design/Build Contract, in the Request for Proposal, provides that "Contracts resulting from this RFP must be governed by and in accordance with the laws of the Commonwealth of Kentucky." Accordingly, to the extent that there is a conflict in the choice of law provisions, the one in the Subcontract would prevail. However, there is no provision in the Subcontract that contradicts the Design/Build Contract's choice of *forum*, which is Kentucky. The mere absence of a forum selection clause in the Subcontract does not create a conflict between it and the Design/Build Contract. Furthermore, the choice of law clause in the Subcontract providing for the application of Tennessee law does not constitute a forum selection clause. In other words, it did not require that Tennessee law be applied by a Tennessee court. A choice of law clause does not automatically designate the chosen jurisdiction as the exclusive forum for the adjudication of disputes. *See, e.g.*, ***Accredo Health Inc. v. Patterson***, No. W2006-02693-COA-R3-CV, 2007 WL 2198574, at *3 (Tenn. Ct. App. Aug. 1, 2007) ("Although the provisions certainly provide that the agreements are to be construed in accordance with Tennessee law, they are not forum selection clauses."); ***Mitsui & Co. (USA), Inc. v. Mira M/V***, 111 F.3d 33, 37 (5th Cir. (La.) 1997) (finding no inconsistency between a choice of law clause requiring application of American law and a forum selection clause requiring disputes to be determined by a London court). The Subcontractor admits in its brief that "ESI's Subcontract document . . . is entirely silent as to the particular forum where claims against the Design/Builder would be resolved." Because the Subcontract does not contain a forum selection clause, there is no conflict between its terms and the terms of the Design/Build Contract, which were incorporated by reference.

### B. Enforceability of the Forum Selection Clause

In Tennessee, a forum selection clause is generally enforceable and binding upon the parties. *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 631 (Tenn. Ct. App. 2000); *Signal Capital Corp. v. Signal One, LLC*, No. E2000-00140-COA-R3-CV, 2000 WL 1281322, at *3 (Tenn. Ct. App. Sept. 7, 2000) *perm. app. denied* (Tenn. Mar. 19, 2001). In *Dyersburg Machine Works, Inc. v. Rentenbach Engineering Co.*, 650 S.W.2d 378, 380 (Tenn. 1983), the Supreme Court instructed the courts of this state to enforce a forum selection clause unless the party opposing enforcement demonstrates that it would be unfair and inequitable to do so. In making this determination, we should consider the following factors, and any others, which bear upon the fundamental fairness of enforcing a forum selection clause: (1) whether the plaintiff cannot secure effective relief in the other state, for reasons other than delay in bringing the action; (2) whether the other state would be a substantially less convenient place for the trial of the action than this state; (3) whether the agreement as to the place of the action was obtained by misrepresentation, duress, abuse of economic power, or other unconscionable means; and (4) whether it would for some other reason be unfair or unreasonable to enforce the agreement. *Id.* (citing *The Model Choice of Forum Act*, 1968). The validity of the forum selection clause depends upon whether it is fair and reasonable in light of all the surrounding circumstances attending its origin and application. *Id.* (citations omitted). In the case before us, the Subcontractor addresses two of these factors in attempting to demonstrate that enforcing the forum selection clause against it would be inequitable and unfair.

## 1. Effective Relief in Kentucky

First of all, the Subcontractor contends that it is "highly doubtful" that the Kentucky court would afford it with a complete remedy. In fact, the Subcontractor claims that "the intent of the Subcontract to apply Tennessee law to any and all disputes . . . will be defeated if this case is dismissed and [the Subcontractor] is required to file its action in the Franklin County Circuit Court in Kentucky." According to the Subcontractor, if the case is filed in Kentucky and later consolidated with the General Contractor's cases against other defendants, it will be too confusing for the Kentucky court to apply Tennessee law to its claim and Kentucky law to claims against other defendants. We are confident that the Kentucky court is fully capable of applying Tennessee law to the issues in this case. In addition, the Kentucky court is best suited to address the Subcontractor's argument regarding the difficulty of applying different states' laws if the court is in fact faced with a motion to consolidate this case with other related cases. This factor does not weigh in favor of refusing to enforce the forum selection clause.

## 2. The Convenience of the Chosen Forum

The Subcontractor also contends that Kentucky would be a substantially less convenient place for trial simply because both of the parties are Tennessee corporations whose representatives would have to travel to Kentucky. The Subcontractor also argues again that it would be inconvenient for it to be required to litigate its claims in a consolidated action with other parties. On the other hand, the General Contractor asks us to consider the fact that the Project is located in Kentucky, and the representatives of the Commonwealth of Kentucky, the other subcontractors, and the Project

Designer DLR Group, Inc. (a Kansas corporation) would be possible witnesses who are not necessarily subject to the subpoena power of the Shelby County Chancery Court.

Enforcing a forum selection clause would be unreasonable in circumstances where forcing the party to proceed in the selected forum would seriously impede its ability to fully and fairly pursue or defend the action. *Sevier County Bank v. Paymentech Merchant Services, Inc.*, No. E2005-02420-COA-R3-CV, 2006 WL 2423547, at \*6 (Tenn. Ct. App. Aug. 23, 2006); *Safeco Ins. Co. of America v. Shaver*, No. 01A01-9301-CH-00005, 1994 WL 481402, at \*4 (Tenn. Ct. App. M.S. Sept. 7, 1994). However, the party resisting a forum selection clause must show more than inconvenience or annoyance such as increased litigation expenses, and the party cannot rely on facts and circumstances that were present or reasonably foreseen when they signed the contract. *Sevier County Bank*, 2006 WL 2423547, at \*6; *Shaver*, 1994 WL 481402, at \*4. In addition, "convenience is evaluated from the perspective of all the parties, not just the Plaintiffs." *Signal Capital Corp.*, 2000 WL 1281322, at \*4.

We find that the Subcontractor has not demonstrated that the Kentucky forum would be substantially less convenient for all parties or that proceeding in Kentucky would be a serious impediment to its ability to fully and fairly pursue the action. Although the representatives of these two entities are located in Tennessee, all other witnesses are outside of this State. In addition, the Project, where the parties worked for approximately four years, and where the alleged breach of contract occurred, is in Kentucky. The Subcontractor has not demonstrated any more than "inconvenience or annoyance" that is encountered by any party who agrees to litigate disputes in another state, which was foreseeable when the Subcontract was executed.

### 3. Other Considerations

The Subcontractor does not allege that the forum selection clause was obtained by misrepresentation, duress, abuse of economic power, or other unconscionable means. These were sophisticated businessmen executing a multimillion dollar contract. Considering all the circumstances surrounding the forum selection clause's origin and application, we do not find that enforcing the clause would be unfair or inequitable. As previously discussed, this case does not involve a forum selection clause choosing a forum having no logical connection with the transaction. The project was located in Kentucky, and although these two parties happen to be from Tennessee, all of the other parties involved are from other states. The Owner of the project is the Commonwealth of Kentucky. In sum, the forum selection clause is fair, reasonable, and enforceable.[7]

### C. Attorney's Fees

---

[7] Because we conclude that the forum selection clause should be enforced, we need not address whether the doctrine of *forum non conveniens* would have otherwise required the case to be dismissed in Shelby County.

The General Contractor has requested an award of its attorney's fees incurred in the trial court and on appeal in attempting to enforce the forum selection clause. "In Tennessee, courts follow the American Rule, which provides that litigants must pay their own attorney's fees unless there is a statute or contractual provision providing otherwise." *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005) (citing *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000)). In this case, the Subcontract provided:

> Should Subcontractor default in any of the provisions of this Subcontract and should Contractor employ an attorney to enforce any provisions hereof, or to collect damages for breach of the Subcontract, or to recover on the bond mentioned in Article II above, Subcontractor and his surety agree to pay Contractor such reasonable attorney's fees as he may expend therein but only to the extent that such loss or damage or expense, including legal fees, expert witness fees or other litigation costs is due to the fault of the subcontractor or anyone for who[m] the subcontractor is liable. Should neither party fully prevail, recoverable fees are limited to those proportionate to the extent each side has prevailed.

The General Contractor contends that the Subcontractor defaulted in a provision of the Subcontract because it "fail[ed] to file its lawsuit in the contractually agreed upon forum." The Subcontractor, in its brief, basically contends that it did not default in any provision of the Subcontract because it did not file its action in the wrong forum.[8]

---

[8] The Subcontractor also asserts that the attorney's fee provision "does not envision defaults occurring as a consequence of the mere act of the subcontractor filing its action in a forum that could rightfully apply Tennessee law in accordance with the Subcontract's express terms." It appears that the Subcontractor is again arguing that it is not in default because, under its interpretation of the Subcontract, the forum selection clause did not apply to its claims. However, to the extent that the Subcontractor was arguing that it would not be in "default" by filing in the wrong forum, this position is directly at odds with the Subcontractor's previous arguments to this Court. In its response to the General Contractor's Rule 10 application, the Subcontractor contended that there would be no potential harm to the General Contractor if we denied its extraordinary appeal, because it would be liable for the General Contractor's attorney's fees if it had, in fact, filed in the wrong forum and we reversed in a post-trial appeal. The Subcontractor argued:

> [The General Contractor] has consistently argued that it will be harmed by awaiting post-trial appeal to review the venue issue because it would have to try the case twice. But, as the chancellor was aware, the contract between the parties contains an attorneys' fee provision, and if [the General Contractor] ultimately prevails in defeating venue in Shelby County, it may be reimbursed those costs it incurs in Shelby County. Thus the potential harm claimed by Appellant is mitigated by its opportunity to recover its losses.
> . . .
> If [the General Contractor is] successful, the case will then be retried in Kentucky, and [the Subcontractor] may be called on to reimburse [the General Contractor] for their attorneys' fees incurred while litigating in Tennessee. [The General

(continued...)

The parties do not cite to any portion of the Design/Build Contract or the Subcontract that separately defines "default," and we have not encountered any such definition. However, we have previously defined "default" as "the omission or failure to perform a legal or contractual duty." **Childress v. Sullivan County Bd. of Educ.**, 771 S.W.2d 411, 416 (Tenn. Ct. App. 1989) (citing *Black's Law Dictionary*, 376 (5th ed. 1979)). Thus, it would appear that the Subcontractor was in default of a provision of the Subcontract, the forum selection clause, by failing to file its action in Franklin County Circuit Court in Kentucky. The General Contractor was forced to employ an attorney to enforce the forum selection clause, incurring legal fees and litigation costs in the trial court and on appeal to this Court. Therefore, we conclude that the General Contractor is entitled to an award of the reasonable attorney's fees it has incurred. With respect to the attorney's fees associated with the initial litigation of this case, this appeal, and any rehearing associated with our remand, we leave determination of the award to the sound discretion of the trial court, which should remain mindful of contractual and statutory authority for awarding attorney's fees.

## V.  CONCLUSION

For the aforementioned reasons, we reverse the decision of the chancery court and remand for further proceedings. Tennessee is not the proper forum for this dispute, and the trial court should enter an order dismissing the complaint after a determination of the proper amount of attorney's fees. Costs of this appeal are taxed to the appellee, ESI Companies, Inc., for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[8](...continued)
> Contractor] will be made whole. In such a situation, it is plain that [the General Contractor] lose[s] no rights and, to the extent that they might face duplicative litigation, they can be reimbursed for such expenses even if they are recoverable at a later date.