# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 16-4391

———————————————

First Dakota National Bank

*Plaintiff - Appellant*

v.

Eco Energy, LLC, a Tennessee limited liability company formerly known as Eco Energy, Inc.

*Defendant - Appellee*

————————

Appeal from United States District Court
for the District of Nebraska - Omaha

————————

Submitted: November 16, 2017
Filed: February 1, 2018

————————

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.

————————

BENTON, Circuit Judge.

First Dakota National Bank sued Eco-Energy, LLC, for breach of contract. The district court[1] ruled for Eco-Energy. First Dakota appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

———————————————

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

I.

Eco-Energy contracted with Nedak Ethanol, LLC. Under a Marketing Contract, Eco-Energy promised to buy all Nedak's ethanol and to transport it by railcar. Eco-Energy leased the railcars from a railcar company under a Car Service Agreement. Nedak promised to sublease the railcars from Eco-Energy if the Marketing Contract were terminated for any reason.

The next year, Nedak assigned its rights under the Marketing Contract and the Sublease to its lead lender, AgCountry Farm Credit Services, FLCA. Eco-Energy consented to the Assignment, agreeing "to give [AgCountry] prompt written notice of any default under the Assigned Documents and to allow [AgCountry] a reasonable period of time to cure any such defaults . . . ."

About three years later, the parties terminated the Marketing Contract. As promised, Nedak subleased the railcars from Eco-Energy. Nedak eventually defaulted. Eco-Energy notified Nedak—but not AgCountry—of the default. Eco-Energy terminated the Sublease, ended Nedak's use of the railcars, and denied Nedak's attempt to cure.

First Dakota National Bank owned an interest in the loan from AgCountry to Nedak. First Dakota later acquired the contractual rights of AgCountry and Nedak against Eco-Energy. First Dakota sued, claiming Eco-Energy terminated the Sublease without giving (1) Nedak notice and a sufficient opportunity to cure, and (2) AgCountry notice and an opportunity to cure Nedak's default.

First Dakota and Eco-Energy both moved for summary judgment. The district court granted Eco-Energy's motion in part, ruling that Eco-Energy did not breach the Sublease. The court ruled that the Sublease did not require Eco-Energy to give Nedak notice and opportunity to cure. The court also ruled that Eco-Energy *did* breach the Assignment. It reasoned that the Assignment required Eco-Energy to give AgCountry

notice and opportunity before terminating the Sublease, because it was an "Assigned Document." But, according to the district court, "issues of fact remain regarding causation which preclude summary judgment for either party" on the Assignment claim.

The bench trial focused on whether Eco-Energy's breach caused damages. The key dispute: Would AgCountry have cured if Eco-Energy had given it notice and opportunity? According to First Dakota, curing would have been "the only reasonable choice." Eco-Energy countered that AgCountry would not have cured because, for example, AgCountry had frozen Nedak's accounts and kept them frozen "even after discovering that Nedak had defaulted on its sublease and was in jeopardy of losing its railcars." The district court found that First Dakota had not "proven that AgCountry would have exercised its right to cure Nedak's default had it received proper notice and opportunity."

## II.

First Dakota argues the district court erred in granting partial summary judgment for Eco-Energy. According to First Dakota, although the Sublease by itself does not require notice and opportunity, it incorporates this requirement from the Car Service Agreement. This court reviews de novo the district court's interpretation of a contract and its grant of summary judgment. *Anderson v. Hess Corp.*, 649 F.3d 891, 896 (8th Cir. 2011).

Under the Tennessee law that governs the Sublease, a "cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Dick Broad. Co., Inc. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). "The literal meaning of the contract language controls if the language is clear and unambiguous." *Id.* "Where a written contract refers to another instrument and makes the terms and conditions of such other instrument a part of it, the two will be construed together as the agreement of the parties." *McCall v. Towne Square, Inc.*,

503 S.W.2d 180, 183 (Tenn. 1973). *See Roger Miller Music v. Sony/ATV Publ'g*, 477 F.3d 383, 392 (6th Cir. 2007) ("[U]nder Tennessee law, a writing may be incorporated by reference into a written contract.").

Section 4.07 of the Car Service Agreement provides the time-frame for notice and opportunity:

> If [] Lessee defaults . . . and any such default continues for fifteen (15) days after Lessor shall have mailed written notice to Lessee . . . then Lessor shall have the right . . . to . . . terminate this Agreement . . . .

First Dakota primarily relies on section 5 of the Sublease in arguing that the Sublease incorporates section 4.07's notice-and-opportunity provision. Section 5 says, "NEDAK . . . agrees and confirms that it shall be bound by all of the terms of and assumes all of the duties and obligations of Eco under the Car Service Agreement . . . except as specifically provided herein."

Section 5 clearly and unambiguously does not incorporate section 4.07's notice-and-opportunity provision. Section 5 says that Nedak is bound by all of the terms of, and assumes all duties and obligations of the lessee under, the Car Service Agreement. It does not say that Eco-Energy is bound by all of the terms of, or assumes the duties and obligations of the lessor under, the Car Service Agreement. Thus, the Sublease incorporates only those terms that bind the lessee, or that impose a duty or obligation on the lessee. The notice-and-opportunity provision binds or imposes a duty or obligation on the *lessor*: to provide written notice and wait 15 days before terminating for the lessee's default.

First Dakota argues that the notice-and-opportunity provision is part of the lessee's duties and obligations, because it modifies them. The notice-and-opportunity provision, by requiring notice and opportunity only if lessee "defaults"—*i.e.*, fails to perform one of its duties—clearly and unambiguously does not modify the lessee's

-4-

duties. *See **Childress v. Sullivan County Bd. of Educ.***, 771 S.W.2d 411, 416 (Tenn Ct. App. 1988) ("Default has been defined as 'the omission or failure to perform a legal or contractual duty.'"), *quoting* "default," ***Black's Law Dictionary*** 376 (5th ed. 1979); "default," ***Black's Law Dictionary*** 480 (9th ed. 2004)[2] (unchanged since 5th edition). *See also **Carter v. Bell***, 279 S.W.3d 560, 570 (Tenn. 2009) ("Recently, this Court specifically identified Black's Law Dictionary as an authoritative information source.").

First Dakota emphasizes that Nedak is "bound by *all* of the terms of" the Car Service Agreement. True, the notice-and-opportunity provision is a "term of" the Car Service Agreement. But Nedak is not "bound" by a term that imposes no duty or obligation on it. *See* "bound," ***Black's Law Dictionary*** 210 (9th ed. 2004) ("Constrained by a contractual or other obligation").

First Dakota also argues that, if read as a whole, the Sublease incorporates the entire Car Service Agreement. In addition to section 5 discussed above, First Dakota relies on the following statement in the Sublease: "WHEREAS, Eco has leased the railcars . . . from [a railcar company] pursuant to a railcar lease agreement ('Car Service Agreement') . . . attached hereto as Exhibit 2 . . . ."

Contracting parties can incorporate an entire agreement by, for example, referring to an attached agreement and saying its "terms" are incorporated without specifying the terms, or saying "both parties" are bound by its terms. *See **Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.***, 160 S.W.3d 521, 523-25 (Tenn. 2005) (agreement incorporated all terms of a brokerage agreement by stating "*[t]he terms and provisions of that certain Brokerage Agreement, an unexecuted photocopy of which is attached hereto . . . and incorporated by reference, are incorporated into*

---

[2]The ninth edition was current when the parties entered into the Sublease. *See **State v. Edmondson***, 231 S.W.3d 925, 928 n.3 (Tenn. 2007) (using the edition that was current when the relevant statute was enacted).

*this Lease and made a part hereof*" (emphasis in original)); ***Roger Miller***, 477 F.3d at 393 (agreement incorporated all terms of Exhibit A, even those not addressing royalties, by stating that "the signing of separate [Exhibit A] agreements is hereby waived, and the terms and conditions as to royalties and the payment thereof shall be deemed part of the main agreement," where previous agreements calling for the execution of Exhibit A agreements stated "*both [parties] are to be bound* by the terms, covenants, and conditions of [the Exhibit A agreement] as if herein fully set forth" (emphasis added)).  The Sublease attaches a copy of the Car Service Agreement, acknowledges its existence and relevance, but says Nedak—not Eco-Energy—is bound by its terms.  This clearly and unambiguously does not incorporate the entire Car Service Agreement.

First Dakota argues that the parties' conduct shows intent to incorporate all terms of the Car Service Agreement.  "[T]he parol evidence rule does not prohibit the court from considering . . . the construction placed upon the contract by the parties in carrying it out." ***Adkins v. Bluegrass Estates, Inc.***, 360 S.W.3d 404, 412 (Tenn. Ct. App. 2011).

The district court found that the parties' conduct incorporated the "Abatement of Rental" section of the Car Service Agreement.  But, as the court correctly reasoned, incorporation of this section, part of the lessee's rental duty, does not suggest that all terms were incorporated.  Eco-Energy also testified that Nedak would get the benefit of any "mileage credits" from a railroad.  But the testimony is hypothetical.  There had been no mileage credits, and none were expected.  This is not evidence of the parties' construction "in carrying [the Sublease] out."  In any event, the testimony relied on standard invoicing practice, not anything in the Car Service Agreement.

The district court did not err in granting partial summary judgment for Eco-Energy.

III.

First Dakota asserts that after trial, the district court erred in denying its claim for breach of the Assignment.  It argues the court applied the wrong legal standard on causation.  Under the North Dakota law that governs the Collateral Assignment, an essential element of a breach-of-contract claim is "damages which flow from the breach." *WFND, LLC v. Fargo Marc, LLC*, 730 N.W.2d 841, 848 (N.D. 2007).  The district court found no causation because AgCountry, if given notice, would not have cured the default.  First Dakota believes the proper standard is objective, asking what a reasonable lender would have done.  "After a bench trial, this court reviews a district court's . . . legal conclusions de novo." *IPSCO Tubulars, Inc. v. Ajax TOCCO Magnathermic Corp.*, 779 F.3d 744, 747 (8th Cir. 2015).

First Dakota relies on section 32-03-09 of the North Dakota Code:

For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by the laws of this state, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby or which in the ordinary course of things would be likely to result therefrom.  No damages can be recovered for a breach of contract if they are not clearly ascertainable in both their nature and origin.

According to First Dakota, it is entitled to damages *either* proximately caused by the breach "*or* which in the ordinary course of things would be likely to result therefrom."  First Dakota argues that although AgCountry may not have cured if given notice and opportunity, "in the ordinary course" a reasonable lender would have.

Section 32-03-09 "is, in effect, the adoption of the common law rule." *Vallejo v. Jamestown Coll.*, 244 N.W.2d 753, 758 (N.D. 1976), *citing Hayes v. Cooley*, 100 N.W. 250 (N.D. 1904). It codifies *one* standard of proximate causation.  *See Jalbert*

-7-

*v. Eagle Rigid Spans, Inc.*, 891 N.W.2d 135, 141 (N.D. 2017) ("Under N.D.C.C. § 32-03-09, the measure of damages for breach of contract is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby." (internal quotation marks omitted)).  This standard requires asking what "actually" would have happened.  *See Vallejo*, 244 N.W.2d at 759 ("The injured person is limited to the loss actually suffered by reason of the breach.  He is not to be put in a better position by a recovery of damages than he would have been if there had been performance.").  The North Dakota Supreme Court has explained that the reference to the "ordinary course of things" codifies the rule in *Hadley v. Baxendale*, limiting damages to those "arising naturally, *i. e., according to the usual course of things*, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it."  *Hayes*, 100 N.W. at 251 (emphasis added), *quoting Hadley v. Baxendale*, 156 Eng. Rep. 145, 151 (1854) *and citing Griffin v. Colver*, 16 N.Y. 489, 494-95 (1858).  *See Vallejo*, 244 N.W.2d at 758-59 (approving *Hayes*).  The district court did not err in asking what AgCountry would have done.  What a reasonable lender would have done may be relevant, but not determinative.

True, an objective standard governs some contract-law questions.  *See, e.g.*, *Moen v. Meidinger*, 583 N.W.2d 634, 636 (N.D. 1998) ("The parties' mutual assent to a contract is determined by their objective manifestations of contractual assent."); *Dan Nelson Const., Inc. v. Nodland & Dickson*, 608 N.W.2d 267, 275 (N.D. 2000) ("[C]ourts construing changed conditions clauses apply an objective, reasonable person standard, in which a court places itself into the shoes of a reasonable and prudent contractor to decide how such a contractor would act . . . ." (internal quotation marks omitted)).  First Dakota advocates a reasonable-lender rule here, claiming the subjective inquiry is "speculative."  North Dakota has not adopted this rule.

First Dakota emphasizes *O'Neil v. Continental Bank, N.A.*, 662 N.E.2d 489, 496 (Ill. App. Ct. 1996), and section 245 of the Restatement (Second) of Contracts. In *O'Neil*, the court held that where causation depends on how a judge would have ruled, "[w]hat the reasonable bankruptcy judge 'should have done' is the proper causation question . . . ." 662 N.E.2d at 496. Here, the decision-maker is a lender, not a judge. *See* **Cogswell v. CitiFinancial Mortg. Co., Inc.**, 624 F.3d 395, 401 (7th Cir. 2010) (describing *O'Neil* as a "special rule in breach-of-contract claims where the asserted damage is caused by an adverse outcome of a judicial proceeding").

Section 245 says, "Where a party's breach by non-performance contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused." Comment b explains that "it is not necessary to show that [the condition] would have occurred but for" the breach. First Dakota applies section 245 to this case, arguing Eco-Energy's non-performance—not giving AgCountry notice and opportunity—"contributed materially" to a non-occurrence—no cure by AgCountry. But section 245 addresses whether there is a breach, not whether a breach caused damages. *See* **Cogswell**, 624 F.3d at 401 n.3 ("[Section 245] addresses causation in the context of determining when a party's failure to perform a condition means the party has breached its contract. . . . In this case, by contrast, we are confronted with the ultimate question of whether a defendant's breach caused the plaintiff's damages." (internal citations omitted)). Even if *O'Neil* and section 245 were North Dakota law, the district court did not err.

*******

The judgment is affirmed.

_____